TARANTO, Circuit Judge, joined by PROST, Chief Judge, and CHEN and HUGHES, Circuit Judges, dissenting from the judgment, and joined in part in other respects by DYK and REYNA, Circuit Judges. Most of this opinion sets forth a full analysis supporting the following two legal conclusions that are joined by a majority of the court—the four Judges signing on to this opinion in full and Judges Dyk and Reyna. First, in an inter partes review (IPR), 35 U.S.C. § 316(a) authorizes the Director of the Patent and Trademark Office (PTO) to address who has the burden of persuasion on the patentability of substitute claims that the patent owner proposes to add to the patent in a motion to amend the patent. Second, 35 U.S.C. § 316(e) does not unambiguously bar assigning that burden to the patent owner. This opinion also notes my agreement with the majority conclusion, set forth in Judge Reyna’s opinion, that certain PTO regulations imposing burdens of production on the patent owner are undisturbed and therefore applicable on remand in this case. On the other hand, I disagree with a conclusion drawn by a differently constituted majority—Judge O’Malley, the four Judges joining her opinion, and Judges Dyk and Reyna—regarding the assignment to the patent owner of the burden of persuasion regarding patentability of proposed substitute claims. The majority has concluded that the PTO has not made that assignment through action that warrants deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). That conclusion leads the court to vacate the decision of the Patent Trial and Appeal Board, which assigned the burden of persuasion to patent owner Aqua Products. I disagree with the conclusion and therefore the vacatur. In my view, a PTO regulation assigns the burden of persuasion to the patent owner, 37 C.F.R. § 42.20(c), and Aqua Products has presented no sound argument against giving Chevron deference to that regulation. Because I would affirm the Board’s decision on that basis, I dissent from the judgment of vacatur. I. Introduction Under the America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011), the PTO may revisit the patentability of patent claims that have been challenged on statutorily specified grounds by way of a petition for an IPR. The PTO’s Director may institute such a review upon determining that “there is a reasonable likelihood that the petitioner would prevail” as to at least one of the challenged claims. 35 U.S.C. § 314(a). After an IPR has been instituted, the patent owner may file a “motion to amend the patent,” proposing “substitute claims” to replace one or more of the challenged claims. 35 U.S.C. § 316(d)(1). Under 35 U.S.C. § 316(e) (“In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpatenta-bility by a preponderance of the evidence.”), the petitioner undisputedly has the burden of persuasion on the unpatenta-bility of any claims it challenges on which the IPR was instituted. The question involved in this case is who has the burden of persuasion regarding patentability of any substitute claims that the patent owner proposes to add to the patent after institution. Congress has directed the Board to adjudicate patentability in IPRs, including the patentability of “any new claim added under section 816(d).” 35 U.S.C. § 318(a). Fulfilling that obligation requires a determination of who has the burden of persuasion as to such proposed substitute claims. Congress has expressly granted the PTO Director the authority under 35 U.S.C. § 316(a)(4) and (a)(9) to promulgate regulations “establishing and governing inter partes review” and “setting forth standards and procedures for allowing the patent owner to move to amend the patent” during an IPR. Based on 37 C.F.R. § 42.20(c), a regulation adopted by the Director through notice-and-comment rule-making pursuant to the § 316(a) authority, the Board, from the outset of the IPR program, has assigned the burden to the patent owner, which is the party requesting an affirmative action from the Board, namely, to add the substitute claims to the patent. Aqua Products contends that Congress foreclosed that choice through § 316(e). The Director argues otherwise. I agree with the Director. The assignment of the burden to the patent owner for proposed substitute claims, which fits within the Director’s § 316(a) regulatory authority, passes muster under the framework established by Chevron. In my view, Section 316(e) does not address the precise issue and does not unambiguously place the burden on an IPR petitioner to prove that the patent owner’s proposed substitute claims are unpatentable. Under Chevron Step Two, the patent owner may be assigned the burden of persuasion as long as doing so is reasonable. Aqua Products makes no meaningful argument under Step Two independent of its Step One argument about § 316(e). Aqua Products’ only remaining contention amounts to a narrow argument for why the Chevron framework should not apply here. I would reject that argument. The assignment to the patent owner of the burden of persuasion regarding proposed substitute claims has from the outset of the IPR program rested on 37 C.F.R. § 42.20(c). That regulation, issued through notice-and-comment rulemaking pursuant to the statutorily granted § 316(a) authority, is a classic example of the kind of agency action that generally warrants application of the Chevron framework. Aqua Products’ only argument about that regulation is about what the regulation means: Aqua Products argues that the regulation is not properly read actually to assign the burden of persuasion at issue. I conclude otherwise—that, judicially interpreted, even without any deference to the PTO, the regulation does assign the burden of persuasion at issue here. Because I reject Aqua Products’ only argument against applying the Chevron framework, I would apply Chevron. I do not address other potential objections to the applicability of the Chevron framework. No such other objections, including objections to the deficiency of the PTO’s rulemaking consideration of the relevant issues, have been raised by Aqua Products or meaningfully briefed by the parties. If the PTO is to assign the burden of persuasion to the patent owner, it will need to launch a new rulemaking—which can obviate objections to the adequacy of the Director’s process and reasoning to date. II. Background In 2013, pursuant to 35 U.S.C. §§ 311— 319, Zodiac Pool Systems, Inc. filed a petition with the PTO for an inter partes review of claims 1-14, 16, and 19-21 of U.S. Patent No. 8,273,183, owned by Aqua Products, Inc. The petition challenged the patentability of those claims on grounds of anticipation and obviousness, based on U.S. Patent Nos. 3,321,787 (Myers), 3,936,-899 (Henkin), and 4,100,641 (Pansini). Zodiac Pool Sys., Inc. v. Aqua Prods., Inc., No. IPR2013-00159 (P.T.A.B. Feb. 25, 2013), Paper No. 5. A panel of the Patent Trial and Appeal Board, exercising authority delegated by the PTO’s Director, 37 C.F.R. §§ 42.4, 42.108, instituted review of claims 1-9, 13, 14, 16, and 19-21. Zodiac Pool Sys., No. IPR2013-00159 (P.T.A.B. Aug. 23, 2013), Paper No. 18. Soon thereafter, pursuant to 35 U.S.C. § 316(d) and 37 C.F.R. § 42.121, Aqua Products filed a motion to amend its patent, proposing to substitute claims 22, 23, and 24 for claims 1, 8, and 20, respectively. Zodiac Pool Sys., No. IPR2013-00159 (P.T.A.B. Mar. 3, 2014), Paper No. 42. Zodiac, in addition to pressing its patenta-bility challenge to the issued claims, opposed the motion to amend, arguing that the proposed substitute claims were likewise unpatentable. Zodiac Pool Sys., No. IPR2013-00159 (P.T.A.B. Mar. 10, 2014), Paper No. 45. The Board, in its final written decision, held both the issued and proposed substitute claims unpatentable and denied Aqua Products’ motion to amend. Zodiac Pool Sys., No. IPR-2013-00159, 2014 WL 4244016 (P.T.A.B. Aug. 22, 2014). With respect to the motion to amend, the Board concluded that the proposed substitute claims were unpatentable based on two of the three prior-art references, i.e., Henkin and Myers, that it had invoked in determining that the issued claims were unpatentable. Id. at *12-17, 29-30. The Board simply concluded that Aqua Products had not carried the ultimate burden of persuasion of showing patentability of the proposed substitute claims. Id. at *27, 30. In ruling that the patent owner had that burden of persuasion, the Board relied on one of the Director’s 2012 regulations, 37 C.F.R. § 42.20(c), governing IPR and other trial proceedings newly created by the AIA.[1] In Idle Free Systems, Inc. v. Bergstrom, Inc., No. IPR2012-00027, 2013 WL 5947697, at *4 (P.T.A.B. June 11, 2013), apparently the first Board decision on a motion to amend under the new IPR provisions, a special Board panel had concluded that § 42.20(c) imposes the burden of persuasion on patentability for a proposed substitute claim on the patent owner, the movant in seeking to amend the patent. On appeal to this court, Aqua Products appealed only the denial of the motion to amend, not the rejection of the issued claims of the T83 patent. After Aqua Products filed its opening brief, the Director intervened to defend the Board’s decision; and not long afterwards, appellee Zodiac withdrew from the appeal. A panel of this court concluded that the Board did not err in holding proposed substitute claims 22-24 unpatentable. In re Aqua Prods., Inc., 823 F.3d 1369 (Fed. Cir. 2016). In affirming the Board’s denial of the. motion to amend, the panel followed several decisions of this court that upheld the PTO’s assignment to the patent owner of the burden of persuasion on the patentability of proposed substitute claims. See Nike, Inc. v. Adidas AG, 812 F.3d 1326, 1332-35 (Fed. Cir. 2016); Synopsys, Inc. v. Mentor Graphics Corp., 814 F.3d 1309, 1323-24 (Fed. Cir. 2016); Prolitec, Inc. v. ScentAir Techs., Inc., 807 F.3d 1353, 1362-65 (Fed. Cir. 2015), petition for reh’g pending; Microsoft Corp. v. Proxyconn, Inc., 789 F.3d 1292, 1307 (Fed. Cir. 2015). Aqua Products sought en banc rehearing to challenge the burden-of-persuasion assignment regarding proposed substitute claims as impermissible under the statute—specifically, as incompatible with 35 U.S.C. § 316(e). Aqua Products’ Pet. for Reh’g En Banc 1. On August 12, 2016, this court vacated the panel’s decision and granted en banc review. In re Aqua Prods., Inc., 833 F.3d 1335 (Fed. Cir. 2016) (en banc). III. Discussion This case involves a familiar pattern under the IPR provisions of the ALA. An IPR was instituted to review claims in an issued patent based on a petitioner’s challenge. While contesting the challenge to the issued claims, the patent owner also filed with the Board, under § 316(d), a “motion to amend [its] patent” to include new claims as substitutes for some of the issued claims. As is common, the patent owner asked for the substitution to be made only if the issued claims were held unpatentable. The Board, upon concluding that the issued claims were unpatentable, was required to determine, in its final written decision, “the patentability of ... any new claim added under section 316(d).” 35 U.S.C. § 318(a). An affirmative determination would require the Director to add the substitute claim to the patent. Id. § 318(b). Here, the Board denied the motion to amend the patent upon determining that the proposed substitute claims were not patentable and so should not be added to the patent. It is undisputed that, under § 316(e), a petitioner has the burden of persuasion on the patentability of the issued claims on which the IPR was instituted. The question presented to us involves the burden of persuasion regarding substitute claims that the patent owner, by a motion to amend, asks the PTO to add to the patent. Who has that burden is a question that must be answered for the Board to carry out the adjudicatory task Congress has assigned it in § 318.[2] I conclude that the Director has answered that question, by assigning the burden of persuasion regarding patentability of proposed substitute claims to the patent owner, in a regulation adopted through notice-and-comment rulemaking in August 2012 in preparation for the September 2012 launch of the IPR program— 37 C.F.R. § 42.20(c). As a threshold matter, I conclude that the assignment of that burden comes within the language of the congressional grant to the Director of authority to promulgate regulations “establishing and governing inter partes review,” 35 U.S.C. § 316(a)(4), and “setting forth standards and procedures for allowing the patent owner to move to amend the patent,” 35 U.S.C. § 316(a)(9). As noted above, assigning the burden of persuasion is necessary for deciding patentability of proposed substitute claims in IPRs. Prescribing an across-the-board rule making the assignment is thus a natural part of establishing and governing IPRs, as authorized by § 316(a)(4), and § 316(a)(9) too is broad enough to reach such a generic rule for evaluating motions to amend. Moreover, § 316(e)’s title (“evidentiary standards”) characterizes assignment and definition of a burden of persuasion as a “standard.” And the Covered Business Method Review provision of the AIA, § 18(a)(1), 125 Stat. at 329, requires the PTO generally to “employ the standards and procedures” of the Post-Grant Review program, 35 U.S.C. §§ 321-329, among them a burden-of-persuasion provision just like § 316(e). See 35 U.S.C. § 326(e). I do not think that the burden of persuasion falls outside the Director’s § 316(a) authority merely because burdens of persuasion are treated as “substantive” for various legal purposes. See O’Malley Op. 1321, 1323-24. Section 316(a) does not use “substantive” as a criterion of exclusion. The term, often used in contrast to “procedural,” lacks a uniform bright-line meaning, and the substance-procedure distinction is not the distinction made by § 316(a)—which, for example, covers both “standards and procedures.” The Supreme Court found § 316(a) to cover the choice of the broadest-reasonable-interpretation approach to construing patent claims, which is not self-evidently either a “substantive” or “procedural” matter. Cuozzo Speed Techs., LLC v. Lee, — U.S. -, 136 S.Ct. 2131, 2142-43, 195 L.Ed.2d 423 (2016).[3] Aqua Products’ chief argument is that the Director’s authority to answer this particular question is superseded by a clear answer given directly by Congress elsewhere in the IPR provisions, namely, in § 316(e). Specifically, Aqua Products argues that § 316(e) precludes the assignment of the burden of persuasion to the patent owner. The Director argues to the contrary. In addressing that dispute, I follow the Chevron framework, which the parties accept with only a brief challenge by Aqua Products. Under Chevron’s Step One, the question is whether Congress has “directly spoken to the precise question at issue,” answering it “unambiguously.” Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778; see Encino Motorcars, LLC v. Navarro, — U.S. -, 136 S.Ct. 2117, 2125-26, 195 L.Ed.2d 382 (2016). Although the ambiguity determination must consider the statute as a whole, see Nat’l Ass’n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 666, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007), Aqua Products’ argument focuses overwhelmingly on § 316(e). If the statute is ambiguous on the question, the Step Two question is whether the choice made by the agency is “reasonable.” Chevron, 467 U.S. at 844, 104 S.Ct. 2778; Encino Motorcars, 136 S.Ct. at 2124-25. I conclude that the suggested statutory bar, § 316(e), does not unambiguously assign to the petitioner the burden of persuasion on the unpatentability of proposed substitute claims. Section 316(e) may properly be understood to reach only issued claims, which the petitioner necessarily challenged (or else they would not be the subject of the instituted IPR), and not to reach proposed substitute claims, which the statute itself makes clear may go unchallenged by the petitioner. In this case, answering the Step One question in the Director’s favor means that the Director’s position passes muster under Chevron because there is no meaningful dispute that it is among the reasonable choices available if the statute is ambiguous on the point. Aqua Products, while predominantly arguing within the Chevron framework that the statute unambiguously forbids the Director’s position, makes a brief argument against the applicability of the Chevron framework. It asserts that 37 C.F.R. § 42.20(c) does not address the burden of persuasion regarding patentability and that Idle Free, which relied on § 42.20(c) as assigning the burden of persuasion at issue, was not a binding Board decision or otherwise owed any deference. I conclude, however, that, wholly apart from any deference to Idle Free or other Board decisions, § 42.20(c)—a binding regulation adopted through notice-and-comment rule-making as authorized by 35 U.S.C. § 316(a)—does assign the burden of persuasion on substitute claims to the patent owner. Aqua Products has not challenged the regulation on other grounds. There being no meritorious objection raised to relying on § 42.20(c) as making the burden assignment at issue, the formal regulation, adopted through notice-and-comment rule-making, suffices to make Chevron applicable. See Encino Motorcars, 136 S.Ct. at 2124-26; City of Arlington v. FCC, 569 U.S. 290, 133 S.Ct. 1863, 1874, 185 L.Ed.2d 941 (2013); Barnhart v. Walton, 535 U.S. 212, 217, 227, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002); United States v. Mead Corp., 533 U.S. 218, 227, 229-30, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). A 1 Within the Chevron framework, the Step One question here focuses on 35 U.S.C. § 316(e). Again, that subsection states: “In an inter partes review instituted under this chapter, the petitioner shall have the burden of proving a proposition of unpa-tentability by a preponderance of the evidence.” The question is whether that provision “unambiguously” applies to a patent owner’s proposed substitute claim. Chevron, 467 U.S. at 843, 104 S.Ct. 2778. Aqua Products argues that it does. Aqua Products relies almost entirely on a simple, textual argument: that, when a petitioner (like Zodiac in this IPR) opposes addition of a proposed substitute claim on the ground that the claim is unpatentable, the petitioner is asserting “a proposition of unpatentability” covered by § 316(e). The Director, in contrast, contends that § 316(e) applies only to the issued patent claims whose patentability is being adjudicated in the IPR. Applying Chevron’s Step One standard, I would reject Aqua Products’ textual argument and conclude that the text admits of being read to apply only to issued claims. The crucial textual fact is § 316(e)’s reliance on a “petitioner” and a “proposition of unpatentability.” The significance of that fact is informed by basic features of the IPR statute: (1) The IPR provisions distinguish between issued claims and newly proposed claims. (2) Congress understood that, for issued claims, a “petitioner” would always have advanced a “proposition of unpatentability.” (3) Congress recognized that a patent owner’s proposed substitute claims may go unchallenged by any “petitioner” and, thus, never lead to any assertion of a “proposition of unpatentability.” And yet (4) the Board has a statutory obligation under § 318(a) to determine the patentability of proposed substitute claims, irrespective of whether they have been challenged as unpatentable. I begin with what § 316(e) does not say: It is not written in terms independent of the presence of a petitioner asserting un-patentability. Thus, it does not expressly mention proposed substitute claims. Nor does it mention “claims” at all, much less in a way that would necessarily imply coverage of proposed substitute claims. Section 316(e) does not use language that broadly declares that to reject any claim the Board must find unpatentability by a preponderance of the evidence. It is not written to refer only to the adjudicator, or only to the patent owner, or only to both. Rather, § 316(e) is written in terms of what “the petitioner” must prove to establish “a proposition of unpatentability.” Aqua Products does not adequately account for that language in asserting a lack of ambiguity under Chevron Step One. The congressional tying of § 316(e) to “the petitioner” and its unpatentability assertion provides a textual basis for the sensible view that, in § 316(e), Congress was writing a rule only for the class of claims that it recognized as necessarily having been challenged as unpatentable by a “petitioner” (namely, issued claims) and not for a distinct class of claims that it expressly recognized might be placed before the Board by the patent owner without any opposition from a petitioner (namely, proposed substitute claims). The provisions governing IPRs make that distinction between issued and proposed substitute claims clear. As to issued claims: An IPR may not be instituted sua sponte by the Director, but only upon a petitioner’s filing of a petition under § 311. The scope of the IPR is also limited by § 311. The petitioner “may request to cancel as unpatentable” issued claims “only on a ground that could be raised under section 102 or 103.” 35 U.S.C. § 311(b). The petition must, among other things, identify with particularity “each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim.” Id. § 312(a)(3). The Director’s determination to institute then is tied to “the information presented in the petition” and the existence of “a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.” Id. § 314(a). Those provisions imply that only claims challenged by the petitioner may be included in the instituted IPR. From the beginning, the Director’s regulations have made that clear. 37 C.F.R. § 42.108(a) (“When instituting inter partes review, the Board may authorize the review to proceed on all or some of the challenged claims and on all or some of the grounds of unpatentability asserted for each claim.”).[4] For all issued claims adjudicated in an IPR, then, Congress could take as a given that “the petitioner” necessarily had challenged them through assertion of a “proposition of unpatentability.”[5] In contrast, Congress made plain its recognition that any new substitute claims proposed by the patent owner during an IPR might well go unchallenged by any petitioner. The provisions of chapter 31 that lay out the framework for a petitioner’s challenge to issued claims (§§ 311 and 312) do not impose on a petitioner any responsibility with respect to substitute claims. More specifically and affirmatively, the provision that addresses motions to amend the patent, § 316(d), expressly establishes that Congress contemplated ^challenged proposed substitute claims. Section 316(d)(2) provides for motions to amend filed “upon the joint request of the petitioner and the patent owner to materially advance the settlement of a proceeding.” 35 U.S.C. § 316(d)(2). As that provision indicates, there is no reason to assume that a petitioner would always be motivated to oppose a proposed substitute claim. Whatever the likelihood in practice, a patent owner may propose substitute claims sufficiently different from the issued claims so as no longer to be of concern to the petitioner—either at all or enough to justify the expense of an adequate opposition. See O’Malley Op. 1309 (“Congress contemplated narrowing amendments which would relieve a petitioner of any threat of infringement. ... ”). For those practical reasons, as reflected expressly in § 316(d)(2), Congress could not have assumed that a proposed substitute claim will always face opposition from a petitioner. Yet Congress expressly demanded that the Board adjudicate the patentability of proposed substitute claims under § 318(a). It is against the background of that Board obligation, and the recognized possibility that a petitioner might not challenge proposed substitute claims, that the language of § 316(e)—specifically, the inclusion of the “petitioner” and “proposition of unpa-tentability” language—must be understood. That language, in a provision not referring specifically to “claims,” is permissibly read to make the same distinction that is made using other language in certain sections that, unlike § 316(e), do refer to “claims.” 35 U.S.C. §§ 314(a), 318(a), 318(b); see O’Malley Op. 1306. The reference to “the petitioner” in § 316(e) is readily understood to embody a simple categorical distinction between issued and proposed substitute claims: for the former, the presence of a “petitioner” assertion of unpatentability is a certainty; for the latter, it is not. That distinction permits reading § 316(e) to apply only to claims for which the categorical assumption of a petitioner unpatentability assertion applies, namely, issued claims. Accepting Aqua Products’ and others’ suggested contrary readings of § 316(e) would require attributing to Congress unproven assumptions about the handling of the clearly contemplated scenario of a proposed substitute claim never opposed by a petitioner. In one such reading, the Board is required simply to issue the proposed substitute claim—even where no examiner ever reviewed it for patentability, even though § 318(a) requires a Board determination regarding patentability, and even when (as in this case) the Board has already concluded that the issued claims on which the IPR was instituted are unpat-entable. In another reading of § 316(e), the Board might make a patentability determination on its own, using any tools available for it to do so. As I read it, Judge O’Malley’s opinion agrees that the first, automatic-grant alternative is not tenable under the statute: the Board must assess patentability of proposed substitute claims on the record of the IPR, even if no petitioner opposes the proposed claims. O’Malley Op. 1296, 1309, 1314. But that view leaves an evident problem: if no petitioner opposes a motion to amend, or the opposition is inadequate in the Board’s view, the record may not contain readily available prior art or arguments that were immaterial to the issued claims but that would render the substitute claims unpatentable.[6] That record-de-fieiency problem might be addressed in significant part by a burden of production on the patent owner—which, importantly, this court today is not restricting the Board’s authority to impose. See Reyna Op. 1340-42. But the record may remain deficient, and it is uncertain to what extent the Board can itself make up for the deficiencies.[7] It is not necessary to explore in detail the alternatives to assigning to the patent owner the burden of persuasion on proposed substitute claims. It is enough to say that § 316(e) does not unambiguously require these or any other suggested alternatives to the sensible interpretation of the “petitioner” and “proposition of unpatenta-bility” language in § 316(e) that permits the Director’s position. That interpretation also accords with a general background rule regarding burdens of persuasion in adjudications. A party that is requesting an affirmative action by a tribunal to alter the pre-proceeding status quo generally has the burden of persuasion to show entitlement to have the tribunal take the requested action.[8] For issued claims, it is the petitioner that is seeking such action: a ruling of unpatenta-bility followed by cancellation. For proposed substitute claims, it is the patent owner that is seeking such action: a ruling of patentability followed by addition to the patent of claims not part of the patent when the IPR was filed. That distinction makes it sensible to read § 316(e)’s specification of the standard of proof the “petitioner” must meet—a preponderance of the evidence, not clear and convincing evidence, as would be required in a district-court validity challenge—as applying only to the petitioner’s requests for affirmative relief, namely, the petitioner’s challenges to issued claims. The general rule that governs the allocation of burdens of persuasion is not limited to judicial proceedings. Section 7(c) of the APA, 5 U.S.C. § 556(d), which governs IPR proceedings as agency adjudications subject to 5 U.S.C. § 554, codifies the rule that the party requesting an order of the tribunal has the burden of persuasion as to the requested order. It provides that “[e]x-cept as otherwise provided by statute, the proponent of a rule or order has the burden of proof,” and the Supreme Court has held that the provision’s “burden of proof’ language refers to the burden of persuasion, Greenwich Collieries, 512 U.S. at 272-81, 114 S.Ct. 2251. By focusing on the proponent of the relevant action, the Director’s interpretation of § 316(e) is consistent with the applicable APA provision, which suggests different treatment, with respect to the burden of persuasion, of a petitioner’s efforts to cancel an issued claim and a patent owner’s request to add a claim. And because § 316(e) refers to the “petitioner,” § 316(e) may sensibly be read to be in harmony with, rather than to depart from, the APA provision.[9] In short, the reference to “petitioner” and “a proposition of unpatentability” in § 316(e) can properly be understood to assume the existence of - a petitioner challenge to the patentability of the claims subject to the provision. No guarantee of such a petitioner challenge applies to a patent owner’s proposed substitute claims, as Congress recognized in § 316(d). In proposing contrary readings of § 316(e), Aqua Products and others make contrary assumptions that they cannot show Congress unambiguously made. For the reasons set forth, § 316(e) contains language that thus provides a textual basis—one that fits and is confirmed by other provisions in chapter 31—for answering the Chevron Step One question in favor of the Director: Congress did not unambiguously address the precise question of the, burden of persuasion for motions to amend. 2 Nothing else in the statute or legislative history justifies a different conclusion about the absence of a clear prohibition on the Director’s position on the assignment of the burden of persuasion on substitute claims. a PTO practice involving proposed claims outside the IPR context does not negate a reading of § 316(e) as reaching only issued claims. It is true that there are other contexts involving patent examination or reexamination in which the patent owner has not been assigned the burden of persuasion on patentability when proposing claims, including amended claims. See In re Oetiker, 977 F.2d 1443, 1445 (Fed. Cir. 1992) (initial examination); Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (ex parte reexamination); In re Etter, 756 F.2d 852, 856-57 (Fed. Cir. 1985) (same).[10] But as Aqua Products acknowledges, the Director did assign such a burden for proposed substitute claims in interference proceedings and other contested cases— which, like the later IPRs, were adjudicatory, oppositional proceedings. See ULF Bamberg v. Dalvey, 815 F.3d 793, 798-99 (Fed. Cir. 2016); Director’s Suppl. Br. 18; Aqua Products’ Suppl. Reply Br. 19. Indeed, IPRs, like other adjudicatory proceedings, including interference and derivation proceedings, are unlike the typical examination or reexamination, in which a patent examiner performs a prior-art search and independently conducts a pat-entability analysis of all claims. See Abbott Labs. v. Cordis Corp., 710 F.3d 1318, 1327-28 (Fed. Cir. 2013). At a minimum, that disparity in background practices between adjudicatory and examinational proceedings means that there is no basis for inferring the clear congressional prescription that Aqua Products urges for § 316(e). b Aqua Products points to the fact that § 316(e) uses the term “patentability,” not “validity,” and argues that this choice of language is significant because an earlier bill in the legislative path to enactment used “validity.” Aqua Products’ Suppl. Br. 12-13; Aqua Products’ Suppl. Reply Br. 4-6, 24. That choice, Aqua Products contends, shows that Congress meant to cover not just issued claims (subject to “validity” analysis) but also proposed claims (subject to “patentability” analysis). But the choice of “patentability” as a term does not justify that inference. Aqua Products cites nothing in the legislative history stating that coverage of proposed claims was the reason for using the word “patentability.” And, in fact, there is a readily available explanation for the choice of language that has nothing to do with a desire to reach beyond issued claims to proposed claims. At the time of the America Invents Act, “patentability,” as opposed to “validity,” was the standard terminology used when the PTO, as opposed to a court, determined compliance with various statutory requirements for patenting; and that usage was standard (if not quite universal) even for already-issued claims, as in reexamination proceedings.[11] There is no basis for attributing the choice of terminology in § 316(e)—and throughout the IPR provisions, 35 U.S.C. §§ 311-319, and Post-Grant Review provisions, id. §§ 321-329—to anything but the simple desire to conform to that standard usage. For that reason, the choice of terminology in § 316(e) would make perfect sense even if § 3lé(e) were expressly limited to “issued claims.” The choice of “pat-entability” thus does not imply coverage of substitute' claims proposed to be added to the patent by the patent owner. Aqua Products correctly notes that the special Covered Business Method Review provision of the AIA refers to “validity,” not “patentability.” AIA § 18(a)(1), 125 Stat. at 829. But that usage does not weaken the essential reason for finding a textual basis for the Director’s view in § 316(e)—the provision’s use of “petitioner” language tied to the “proposition of unpatentability.” Moreover, there is good reason to believe that the Covered Business Method Review provision’s reference to “validity” is unrelated to Aqua Products’ proposed distinction. The provision originated in an amendment on the Senate floor just before passage of the bill, not in the same series of committee actions that conformed' the other provisions of the bill to the standard “patentability” usage. See 157 Cong. Rec. S1038 (daily ed. Mar. 1, 2011). Further, the Covered Business Method Review provision itself elsewhere incorporates the Post-Grant Review regime, which uses “patentability” language in common with the IPR regime. 35 U.S.C. §§ 321, 324, 326, 328; AIA § 18(a)(1), 125 Stat. at 329. Thus, there is no basis for inferring a congressional intent to distinguish the terms in this context. c Aqua Products asserts that § 316(e) begins with the introductory phrase “[i]n an inter partes review” and that a motion to amend, or at least the proposed substitute claim that is the subject of the motion, is one of the things that are “in” the IPR. Even if Aqua Products were correct, however, the two assertions taken together would not justify its suggested inference about § 316(e) and substitute claims. The “in” aspect of the provision’s language is only one requirement for coverage by the provision. As already explained, there is also the “petitioner” and “proposition of unpatentability” language, which, as explained, can be understood as establishing an additional requirement that excludes substitute claims. Satisfaction of one requirement does not imply satisfaction of the other. d That § 316(e), which governs “evidentia-ry standards,” is located at the end of § 316 does not imply that its burden-of-persuasion rule clearly applies to all claims in a proceeding, including proposed substitute claims. Section 316 is not a tightly integrated provision whose structure would clearly define the relationship of each part to the others. Rather, following provisions on, e.g., petitions, institution, and relation to other proceedings, § 316 addresses a variety of topics, in separate subsections, concerning the “conduct” of IPRs. In this “conduct” provision, the topics covered are “frjegulations” the Director is to promulgate on a range of subjects, § 316(a); “[considerations” governing the Director’s adoption of regulations, § 316(b); the “Board” as the designated entity to “conduct” each IPR, § 316(c); “[ajmendment of the patent,” § 316(d); and, finally, “[ejvidentiary standards,” § 316(e). No clear inference can be drawn about § 316(e)’s scope from its placement within the section. e Pointing to the “estoppel” provision of § 315(e), Judge O’Malley suggests that the provision applies to issued and substitute claims and that it is illogical to estop the petitioner as to any claims for which it lacked the burden of persuasion. O’Malley Op. 1310-11. I do not see the suggested illogie, let alone statutory language supporting the suggestion. Section 315(e)’s rule denying the petitioner- certain second chances applies equally, and makes logical sense, whether the petitioner’s first chance (in the IPR) was one for which the petitioner had to carry the burden of proving unpatentability or, instead, had the easier task of arguing that the patent owner failed to prove patentability. The provision’s language and rationale apply in both circumstances. The provision thus cannot imply that the petitioner has the burden of persuasion on proposed substitute claims. [[Image here]] For all of the foregoing reasons, the authority of the Director, under § 316(a), readily encompasses assignment to the patent owner of the burden of persuasion regarding substitute claims it proposes in a motion to amend the patent. Moreover, § 316(e), considered alone and in the context of the overall IPR regime, does not override that authority under the Chevron Step One standard requiring a clear congressional resolution of the issue. Assignment of the burden of persuasion to the patent owner thus clears Step One. Aqua Products makes no meaningful argument challenging that assignment under Step Two: it does not deny that, for example, the possible absence or inadequacy of any petitioner opposition makes the assignment of the burden to the patent owner a reasonable choice if, as I conclude at Step One, the choice is left to the Director under § 316(a). The Director’s position thus passes muster under Chevron. B Aqua Products’ only remaining contention is a brief challenge to the applicability of the Chevron framework here. This contention focuses on 37 C.F.R. § 42.20(c), the regulation that provides the basis for assigning the patent owner the burden of persuasion on the patentability of any substitute claims that it seeks to add to the patent. Aqua Products offers two related arguments. First, Aqua Products argues that § 42.20(c), which was addressed in Idle Free and is indisputably binding, does not in fact establish a burden of persuasion regarding the Board’s patentability assessment, but only a burden to justify adding a substitute claim to the IPR. Aqua Products’ Suppl. Br. 29-31. Second, Aqua Products argues that the Board’s “informative” decision in Idle Free was not a binding determination, and does not deserve deference for that reason. Aqua Products’ Suppl. Br. 25-26. I would reject the first of Aqua Products’ contentions, based on an independent judicial interpretation of the regulation—a conclusion that makes the second of Aqua Products’ contentions immaterial. That is, without reliance on deference to agency regulatory interpretations, I conclude that § 42.20(c), when applied to a motion to amend the patent, imposes the burden of persuasion as to patentability of substitute claims on the patent owner. Aqua Products does not develop any argument against the applicability of the Chevron framework if, as I conclude, the regulation has that meaning even without special deference as to its interpretation. A procedurally proper regulation that is within the Director’s authority under § 316(a) is subject to.the Chevron framework. See Encino Motorcars, 136 S.Ct. at 2124-26; Barnhart, 535 U.S. at 217, 227, 122 S.Ct. 1265; Mead Corp., 533 U.S. at 227, 229-30, 121 S.Ct. 2164. Aqua Products makes no argument for procedural impropriety or any other defect in the (notice- and-comment) rulemaking process that produced 37 C.F.R. § 42.20(c). I find mer-itless the limited objection made by Aqua Products as to what that regulation means. On that basis I conclude that the regulation itself suffices to make Chevron applicable. I do not address potential objections that Aqua Products has not made and the parties have not briefed. 1 In February 2012, preparing for the September 2012 launch of the IPR and related programs created by the AIA, the Director proposed various regulations pursuant to various grants of rulemaking authority, including the § 316(a) authority for IPRs generally and motions to amend particularly. See 35 U.S.C. §§ 2(b)(2), 316(a), 326(a). As relevant here, one of the proposals was a regulation governing motions, 37 C.F.R. § 42.20. See Notice of Proposed Rulemaking, Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg.. 6879, 6885, 6909 (proposed Feb. 9, 2012) (2012 Notice). As proposed (and adopted), § 42.20(c) declares: Burden of proof. The moving party has the burden of proof to establish that it is entitled to the requested relief. Id. at 6909. In proposing § 42.20, the Director made clear that the regulation “would place the burden of proof on the moving party” and that it would apply to “requests to amend the patent.” Id. at 6885. In August 2012, after receiving comments from the public, the Director adopted the provision as proposed. 2012 Final Rule, 77 Fed. Reg. at 48,610-20, 48,673. The Director again made clear that the rule “places the burden of proof on the moving party” and that it applies to “requests to amend the patent.” Id. at 48,-619.[12] Although I rely here solely on the 2012 regulation independently construed, I note again that, in 2013, a special six-member panel of the Board concluded that, “[flor a patent owner’s motion to amend, 37 C.F.R. § 42.20(c) places the burden on the patent owner to show a patentable distinction for each proposed substitute claim over the prior art ... the burden is not on the petitioner to show unpatentability, but on the patent owner to show patentable distinction.” Idle Free Sys., 2013 WL 5947697, at *4.[13] That conclusion has uniformly been understood as referring to the burden of persuasion. Under internal PTO procedures, Idle Free was designated “informative.” The Director did not need to approve such a designation. See Standard Operating Procedure 2 (rev. 9). In subsequent years, the burden-of-persuasion assignment was applied in numerous IPRs, was approved by this court, see Proxyconn, 789 F.3d at 1307, and was reaffirmed in a ruling (which the Director approved as “precedential”) by another special panel of the Board, see MasterImage 3D, Inc. v. RealD Inc., No. IPR2015-40, 2015 WL 10709290, at *1 (P.T.A.B. 2015). And the Director, in preparing for and conducting various rule-making proceedings, solicited comments on the amendment process and explained why she was not proposing to change the assignment. See, e.g., Request for Comments on Trial Proceedings Under the America Invents Act Before the Patent Trial and Appeal Board, 79 Fed. Reg. 36,474, 36,476 (June 27, 2014); Proposed Rule, Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board, 80 Fed. Reg. 50,720, 50,723-24 (proposed Aug. 20, 2015); Amendments to the Rules of Practice for Trials Before the Patent Trial and Appeal Board, 81 Fed. Reg. 18,-750,18,754-55 (Apr. 1, 2016). Those PTO actions show the consistency of the PTO regarding the interpretation of § 42.20(c). Even that fact, however, is not necessary to my conclusion. I rely on none of the activity post-dating the August 2012 promulgation of 37 C.F.R. § 42.20(c) in concluding, on this record, that the Chevron framework is applicable. 2 For the Director’s position on the assignment of the burden of persuasion regarding proposed substitute claims to trigger application of the Chevron framework, it suffices that her formally promulgated regulation, 37 C.F.R. § 42.20(c), embodies that position. I so read the regulation, without the need to rely on deference to a Board or Director interpretation of the regulation. That is, as a matter of independent judicial determination of the best interpretation, I agree with Idle Free’s reading of § 42.20(c) as to the burden of persuasion, without relying on deference to Idle Free or other agency pronouncements on the regulation’s meaning. Aqua Products correctly accepts that § 42.20(c) applies to a motion to amend the patent, as the Director made clear in 2012 when proposing and adopting the regulation. But Aqua Products contends that § 42.20(c) means only that the patent owner must show entitlement to “bring[ ] the proposed substitute claims into the proceeding,” which Aqua Products says is the' “requested relief,” not that the patent owner must show entitlement to add the proposed substitute claims to the patent. Aqua Products’ Suppl. Br. 30-31; see id. at 31 (“[T]he ‘requested relief is merely to have the proposed amended claims added to the IPR .... ”). That contention is wrong. Section 42.20(c), entitled “burden of proof,” states that “[t]he moving party has the burden of proof to establish that it is entitled to the requested relief.” 37 C.F.R. § 42.20(c). Contrary to Aqua Products’ contention, the “requested relief’ in a motion to amend the patent is not the addition of the proposed substitute claim to the IPR. In a motion “to amend the patent,” 35 U.S.C. § 316(d)(1) (emphasis added), the requested relief is to add the proposed substitute claims to the patent. See also 37 C.F.R. § 42.121(a) (“motion to amend a patent”) (emphasis added). Of course, the Board may “enter” the motion before deciding whether to grant it. See Final Rule, Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48,680, 48,-692 (Aug. 14, 2012). But as the PTO stated, what is “entered” into the IPR proceeding is the “motion,” not the proposed substitute claims. Id. at 48,690. And such a procedural step does not change what the motion requests, which is addition of the proposed substitute claims to the patent, not addition to the roster of claims at issue in the IPR. From the outset of the IPR program, granting (as opposed to entering) the motion has meant adding the substitute claims to the patent. By its plain terms, then, § 42.20(c) assigns to the mov-ant—the patent owner—“the burden of proof to establish” entitlement to that relief. Aqua Products is therefore wrong in its only real argument against reading § 42.20(c) as assigning the burden of persuasion on patentability to the patent owner. Once it is clear that the motion to amend the patent focuses on what is required to justify addition to the patent, it is also clear what the proper understanding of § 42.20(c) is. Under the terms of 35 U.S.C. § 318(a) & (b), entitlement to addition of the proposed substitute claim to the patent requires patentability of the claim. That is the subject of the “burden of proof.” And there is no basis for giving “burden of proof’ in § 42.20(c) a different meaning from the indistinguishable phrase in § 316(e)—namely, “burden of proving”—which undisputedly means the burden of persuasion. Indeed, as already noted, the text of § 42.20(c) uses language from a pre-AIA regulation that, when it was promulgated, the Director made clear was addressing the burden of persuasion. See supra n.12. For those reasons, I conclude, without relying on any deference to the agency, that the Director’s formally promulgated regulation, § 42.20(c), prescribes the burden-of-persuasion assignment at issue here. In light of that conclusion, Aqua Products’ criticism of any reliance on Idle Free is immaterial. 3 Aqua Products makes no other objection to applying the Chevron framework, despite the Director’s repeated invocations of that framework, and § 42.20(c) particularly, before the panel and the en banc court. See Director’s Suppl. Br. 7-21; Director’s Br. 17-24. In particular, Aqua Products does not argue, under Encino Motorcars, — U.S. -, 136 S.Ct. 2117, 195 L.Ed.2d 382, that the Director’s rulemaking was procedurally inadequate because the Director failed to set forth sufficient reasoning to justify an interpretation of § 316(e) that permits assigning to the patent owner the burden of persuasion on the patentability of substitute claims. Nor does Aqua Products argue that the Director’s rule-making was somehow defective under Negusie v. Holder, 555 U.S. 511, 129 S.Ct. 1159, 173 L.Ed.2d 20 (2009), which held that the Chevron framework is not applicable where an agency erroneously perceives the correct interpretation of a statute to be judicially compelled rather than left to the agency’s discretion. Reflecting the fact that Aqua Products did not raise such arguments about the applicability of Chevron here, the government has not developed responsive arguments. As a result, it has not presented arguments that address, for example, whether the present adjudication is a proper vehicle for challenging the adequacy of the Director’s reasoning in the 2012 rule-making proceeding, whether the Director had to engage in more statutory analysis than the 2012 rulemaking discloses, and whether for a rule like the one at issue here—which, unlike the rule in Encino, reverses no previous rule—the comments filed in the rulemaking proceeding circumscribe what agency reasoning is necessary. Those kinds of issues about Chevron’s applicability do not affect this court’s jurisdiction, so we are not obliged to raise them sua sponte. I do not suggest that there is a rigid bar to our addressing such matters, though raising issues sua sponte is generally disfavored. See, e.g., Arizona v. California, 530 U.S. 392, 412-13, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000); Silber v. United States, 370 U.S. 717, 718-19, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962). But I ultimately think it inadvisable to do so here, considering such factors as the interests in full adversarial presentation and the degree of uncertainty in the relevant governing law on the matters not fully developed before us. In these circumstances, I would apply the Chevron framework in this case—under which, as already concluded, the Director’s position is valid. IV. Conclusion For the foregoing reasons, I would uphold the burden-of-persuasion assignment to Aqua Products. Having rejected Aqua Products’ legal challenge to that assignment, I would reinstate the panel opinion, which affirms the Board’s denial of Aqua Products’ motion to amend for failure to carry the burden. Accordingly, although I agree with the majority’s resolution of the legal questions about the scope of § 316(a) and the ambiguity of § 316(e), I respectfully dissent from the judgment of the court vacating the Board decision. . Those regulations relied on the Director’s rulemaking authority under § 316(a) as well as other rulemaking authority relevant to the other proceedings covered by the regulations, e.g., 35 U.S.C. §§ 2(b)(2), 326(a). See Final Rule, Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612, 48,670 (Aug. 14, 2012) (2012 Final Rule). . I agree with Judge Reyna's discussion in Part III of his opinion that nothing in today's decision casts doubt on the PTO's authority or prescriptions regarding the burden of producing evidence or duties to address specified matters in pleadings or other filings. See Reyna Op. 1340-42. . The burden of persuasion, for its part, is "procedural” enough that the Administrative Procedure Act (APA) contains a provision, 5 U.S.C. § 556(d), that assigns the burden of persuasion to the proponent of an agency rule or order. See Dir., Office of Workers’ Comp. Programs, Dep’t of Labor v. Greenwich Collieries, 512 U.S. 267, 272-81, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994); cf. Cooper v. Oklahoma, 517 U.S. 348, 367, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (referring to "procedures” as including the burden of persuasion). Such matters are properly distinguished from, importantly, the interpretation of the statute’s patentability provisions, e.g., 35 U.S.C. §§ 101, 102, 103, 112, over which the PTO has not been granted deference-generating authority. See In re Cuozzo Speed Techs., LLC, 793 F.3d 1268, 1279 (Fed. Cir. 2015), aff'd sub nom. Cuozzo, 136 S.Ct. 2131. It was the latter, "substantive criteria of pat-entability” that the Director was distinguishing when characterizing the 2012 rules as "procedural and/or interpretive.” 2012 Final Rule, 77 Fed. Reg. at 48,650, 48,651. . That regulation refers to the Board because, as noted, the Director has delegated institution authority to the Board. 37 C.F.R. §§ 42.4, 42.108. . Section 317 recognizes that, after institution, one or all petitioners may drop out of the proceeding. But that possibility does not contradict the premise, implied in the IPR regime as just indicated, that a petitioner did challenge all of the issued claims subject to the instituted IPR—and, indeed, made a record before institution sufficiently strong to support a determination that unpatentability is at least reasonably likely. . A proposed substitute claim by definition is different from the issued claims and, under 35 U.S.C. § 282(a), must be evaluated on its own terms. See Altoona Publix Theatres, Inc. v. Am. Tri-Ergon Corp., 294 U.S. 477, 487, 55 S.Ct. 455, 79 L.Ed. 1005 (1935); Jones v. Hardy, 727 F.2d 1524, 1528 (Fed. Cir. 1984). Amendments, which are not permitted to be broadening, 35 U.S.C. § 316(d)(3), typically narrow claims, often by adding a new element. Additional prior art may be needed to evaluate a new claim with a new element: if that element was absent from the claims on which the IPR was instituted, the petitioner may not have initially introduced prior art that addressed the element. . It is at present unclear to what extent the Board may sua sponte introduce evidence or arguments into the record—and rely on them after giving notice and opportunity to be heard—even in adjudicating the patentability of issued claims, much less in assessing proposed substitute claims. IPRs, as the PTO has accepted in briefs to our court, are "adjudications” under 5 U.S.C. § 554, see Belden Inc. v. Berk-Tek LLC, 805 F.3d 1064, 1080 (Fed. Cir. 2015), and they are partly like district-court adjudications, see Cuozzo, 136 S.Ct. at 2143-44. It is therefore relevant that district courts have various record-expanding powers. See Day v. McDonough, 547 U.S. 198, 205-11, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006); Monolithic Power Sys., Inc. v. 02 Micro Int’l Ltd., 558 F.3d 1341, 1346-48 (Fed. Cir. 2009); Fed. R. Evid. 614(a) ("The court may call a witness on its own or at a party's request.”), 706(a) ("The court may appoint any expert that the parties agree on and any of its own choosing.”); see also 37 C.F.R. § 42.62(a) (generally adopting Federal Rules of Evidence for IPRs). Cuozzo’s recognition that IPRs are "hybrid” proceedings that are partly court-like and partly "specialized administrative proceeding[s],” 136 S.Ct. at 2143-44, may suggest that Board powers over the record are even greater than those of courts. . Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005) (" 'Perhaps the broadest and most accepted idea is that the person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims.’ ” (quoting Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 3.1, at 104 (3d ed. 2003))); id. at 57-58, 126 S.Ct. 528 ("Absent some reason to believe that Congress intended otherwise, ... the burden of persuasion lies where it usually falls, upon the party seeking relief.”); see also Medtronic, Inc. v. Mirowski Family Ventures, LLC, - U.S. -, 134 S.Ct. 843, 851, 187 L.Ed.2d 703 (2014); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009); Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 92-93, 128 S.Ct. 2395, 171 L.Ed.2d 283 (2008); 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 3.3 (4th ed. 2017); Kenneth S. Broun et al., 2 McCormick on Evidence § 337 (7th ed. 2017); Kenneth W. Graham, Jr., 21B Federal Practice & Procedure Evidence § 5122 (2d ed. 2017). . IPR proceedings are adjudications subject to 5 U.S.C. § 554 and hence to 5 U.S.C. § 556. See Belden, 805 F.3d at 1080. In contrast, examinations of original applications are outside 5 U.S.C. § 556, which covers rule-makings subject to § 553 and adjudications subject to § 554. Such examinations are not rulemakings, and they also fall outside § 554 because (a) that provision excludes matters that are "subject to a subsequent trial of the law and the facts de novo in a court,” 5 U.S.C. § 554(a)(1), and (b) disappointed patent applicants may obtain such a trial under 35 U.S.C. § 145. See Kappos. v. Hyatt, 566 U.S. 431, 132 S.Ct. 1690, 182 L.Ed.2d 704 (2012) (§ 145 provides for de novo trial on applications); In re Gartside, 203 F.3d 1305, 1313 (Fed. Cir. 2000) (examinations not subject to § 556). Ex parte reexaminations were subject to 35 U.S.C. § 145 until the AIA amended 35 U.S.C. § 306. IPRs are not subject to 35 U.S.C. § 145 or any de novo court trial. The traditional burdens applicable in examinations therefore cannot be simply trans-posed to the IPR setting. See infra pp. 1354-56 (§ III.B.l). . As to amended claims in those examina-tional contexts, see In re Jung, 637 F.3d 1356, 1360-62 (Fed. Cir. 2011); In re Morris, 127 F.3d 1048, 1051-57 (Fed. Cir. 1997); Ethicon, 849 F.2d at 1427; Etter, 756 F.2d at 856-57. . See, e.g., 35 U.S.C. §§ 301, 303, 304, 306, 307 (ex parte reexamination); id. §§ 312, 313, 315, 316 (2006) (inter partes reexamination); 37 C.F.R. §§ 1.501, 1.510, 1.515, 1.520, 1.525, 1.530, 1.550, 1.555, 1.560 (2010) (ex parte reexamination); id. §§ 1.097, 1.915, 1.923, 1.927, 1.931, 1.933, 1.948, 1.949, 1.953 (2010) (inter partes reexamination); Manual of Patent Examining Procedure chs. 22, 26 (8th ed. rev. 8 2010). But see 35 U.S.C. § 315(c) (referring to claim "determined to be valid and patentable”). . The language of § 42.20(c) is nearly identical to 37 C.F.R. § 41.121(b) (2010), a preexisting provision governing the few pre-AIA contested cases, such as interferences. The contested-case regulation, when adopted in 2004, was accompanied by the Director's comments referring to the burden of persuasion. See Rules of Practice Before the Board of Patent Appeals and Interferences, 69 Fed. Reg. 49,960, 49,987 (Aug. 12, 2004). . The Board panel in Idle Free also cited 37 C.F.R. § 42.121, which deals with what the patent owner must address in its motion to amend, not with a burden of persuasion in assessing the evidence.