Justice Thomas
delivered the opinion of the Court.
The Patent Act of 1952, 35 U. S. C. § 100 et seq., grants a patent applicant whose claims are denied by the Patent and Trademark Office (PTO) the opportunity to challenge the PTO’s decision by filing a civil action against the Director of the PTO in federal district court. In such a proceeding, the applicant may present evidence to the district court that he did not present to the PTO. This case requires us to consider two questions.. First, we must decide whether there are any limitations on the applicant’s ability to introduce new evidence before the district court. For the reasons set forth below, we conclude that there are no evidentiary restrictions beyond those already imposed by the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Second, we must determine what standard of review the district court should apply when considering new evidence. On this *434 question, we hold that the district court must make a de novo finding when new evidence is presented on a disputed question of fact. In deciding what weight to afford that evidence, the district court may, however, consider whether the applicant had an opportunity to present the evidence to the PTO.
I
The Patent Act of 1952 establishes the process by which the PTO examines patent applications. A patent examiner first determines whether the application satisfies the statutory prerequisites for granting a patent. 35 U. S. C. § 131. If the examiner denies the application, the applicant may file an administrative appeal with the PTO’s Board of Patent Appeals and Interferences (Board). § 134. If the Board also denies the application, the Patent Act gives the disappointed applicant two options for judicial review of the Board’s decision. The applicant may either: (1) appeal the decision directly to the United States Court of Appeals for the Federal Circuit, pursuant to § 141; or (2) file a civil action against the Director of the PTO in the United States District Court for the District of Columbia pursuant to § 145.[1]
In a § 141 proceeding, the Federal Circuit must review the PTO’s decision on the same administrative record that was before the PTO. § 144. Thus, there is no opportunity for the applicant to offer new evidence in such a proceeding. In *435 Dickinson v. Zurko, 527 U. S. 150 (1999), we addressed the standard that governs the Federal Circuit’s review of the PTO’s factual findings. We held that the Administrative Procedure Act (APA), 5 U. S. C. § 701 et seq., applies to § 141 proceedings and that the Federal Circuit therefore should set aside the PTO’s factual’findings only if they are “ ‘unsupported by substantial evidence.’” 527 U. S., at 152 (quoting 5 U.S. C. §706).
In Zurko, we also noted that, unlike § 141, § 145 permits the applicant to present new evidence to the district court that was not presented to the PTO. 527 U. S., at 164. This •opportunity to present new evidence is significant, not the least because the PTO generally does not accept oral testimony. See Brief for Petitioner 40, n. 11. We have not yet addressed, however, whether there are any limitations on the applicant’s ability to introduce new evidence in such a proceeding or the appropriate standard of review that a district court should apply when considering such evidence.
I — I HH
In 1995, respondent Gilbert Hyatt filed a patent application that, as amended, included 117 claims. The PTO’s patent examiner denied each claim for lack of an adequate written description. See 35 U. S. C. § 112 (requiring patent applications to include a “specification” that provides, among other information, a written description of the invention and of the manner and process of making and using it). Hyatt appealed the examiner’s decision to the Board, which eventually approved 38 claims, but denied the rest. Hyatt then filed a § 145 action in Federal District Court against the Director of the PTO (Director), petitioner here.
To refute the Board’s conclusion that his patent application lacked an adequate written description, Hyatt submitted- a written declaration to the District Court. In the declaration, Hyatt identified portions of the patent specification that, in his view, supported the claims that the Board held *436 were not patentable. The District Court determined that it could not consider Hyatt’s declaration because applicants are “ ‘precluded from presenting new issues, at least in the absence of some reason of justice put forward for failure to present the issue to the Patent Office.’” Hyatt v. Dudas, Civ. Action No. 03-0901 (D DC, Sept. 30, 2005), p. 9, App. to Pet. for Cert. 182a (quoting DeSeversky v. Brenner, 424 F. 2d 857, 858 (CADC 1970) (per curiam)). Because the excluded declaration was the only additional evidence submitted by Hyatt in the § 145 proceeding, the evidence remaining before the District Court consisted entirely of the PTO’s administrative record. Therefore, the District Court reviewed all of the PTO’s factual findings under the APA’s deferential “substantial evidence” standard. See Mazzari v. Rogan, 323 F. 3d 1000,1004-1005 (CA Fed. 2003). Applying that standard, the District Court granted summary judgment to the Director.
Hyatt appealed to the Federal Circuit. A divided panel affirmed, holding that the APA imposed restrictions on the admission of new evidence in a § 145 proceeding and that the district court’s review is not “wholly de novo.” Hyatt v. Doll, 576 F. 3d 1246, 1269-1270 (2009). The Federal Circuit granted rehearing en banc and vacated the District Court’s grant of summary judgment. The en bane court first held “that Congress intended that applicants would be free to introduce new evidence in § 145 proceedings subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the Federal Rules of Civil Procedure,” even if the applicant had no justification for failing to present the evidence to the PTO. 625 F. 3d 1320, 1331 (2010). Reaffirming its precedent, the court also held that when new, conflicting evidence is introduced in a § 145 proceeding, the district court must make de novo findings to take such evidence into account. Id., at 1336. We granted certiorari, 564 U. S. 1036 (2011), and now affirm.
*437 III
The Director challenges both aspects of the Federal Circuit's decision. First, the Director argues that a district court should admit new evidence in a § 145 action only if the proponent of the evidence had no reasonable opportunity to present it to the PTO in the first instance. Second, the Director contends that, when new evidence is introduced, the district court should overturn the PTO’s factual findings only if the new evidence clearly establishes that the agency erred. Both of these arguments share the premise that § 145 creates a special proceeding that is distinct from a typical civil suit filed in federal district court and that is thus governed by a different set of procedural rules. To support this interpretation of § 145, the Director relies on background principles of administrative law and pre-existing practice under a patent statute that predated § 145. For the reasons discussed below, we find that neither of these factors justifies a new evidentiary rule or a heightened standard of review for factual findings in § 145 proceedings.
A
To address the Director’s challenges, we begin with the text of § 145. See, e. g., Magwood, v. Patterson, 561 U. S. 320, 331 (2010). Section 145 grants a disappointed patent applicant a “remedy by civil action against the Director.” The section further explains that the district court “may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the [PTO], as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law.” By its terms, § 145 neither imposes unique evidentiary limits in district court proceedings nor establishes a heightened standard of review for factual findings by the PTO.
*438 B
In the absence of express support for his position in the text of § 145, the Director argues that the statute should be read in light of traditional principles of administrative law, which Congress codified in the APA. The Director notes that § 145 requires a district court to review the reasoned decisionmaking of the PTO, an executive agency with specific authority and expertise. Accordingly, the Director contends that a district court should defer to the PTO’s factual findings. The Director further contends that, given the traditional rule that a party must exhaust his administrative remedies, a district court should consider new evidence only if the party did not have an opportunity to present it to the agency.
We reject the Director’s contention that background principles of administrative law govern the admissibility of new evidence and require a deferential standard of review in a §145 proceeding. Under the APA, judicial review of an agency decision is typically limited to the administrative record. See 5 U. S. C. § 706. But, ás the Director concedes, § 145 proceedings are not so limited, for the district court may consider new evidence. When the district court does so, it must act as a factfinder. Zurko, 527 U. S., at 164. In that role, it makes little sense for the district court to apply a deferential standard of review to PTO factual findings that are contradicted by the new evidence. The PTO, no matter how great its authority or expertise, cannot account for evidence that it has never seen. Consequently, the district court must make its own findings de novo and does not act as the “reviewing court” envisioned by the APA. See 5 U.S. C. §706.
We also conclude that the principles of administrative exhaustion do not apply in a § 145 proceeding. The Director argues that applicants must present all available evidence to the PTO to permit the PTO to develop the necessary facts and to give the PTO the opportunity to properly apply the *439 Patent Act in the -first instance. Brief for Petitioner 21-22 (citing McKart v. United States, 395 U. S. 185, 193-194 (1969)). But as this Court held in McKart, a primary-purpose of administrative exhaustion “is, of course, the avoidance of premature interruption of the administrative process.” Id., at 193. That rationale does not apply here because, by the time a §145 proceeding occurs, the PTO’s process is complete. Section 145, moreover, does not provide for remand to the PTO to consider new evidence, and there is no pressing need for such a procedure because a district court, unlike a court of appeals, has the ability and the competence to receive new evidence and to act as a fact-finder. In light of these aspects of §145 proceedings — at least in those cases in which new evidence is presented to the district court on a disputed question of fact — we are not persuaded by the Director’s suggestion that § 145 proceedings are governed by the' deferential principles of agency review.
C
Having concluded that neither the statutory text nor background principles of administrative law support an eviden-tiary limit or a heightened standard of review for factual findings in § 145 proceedings, we turn to the evidentiary and procedural rules that were in effect when Congress enacted § 145 in 1952. Although § 145 is a relatively modern statute, the language in that provision originated in the Act of July 8, 1870 (1870 Act), ch. 230, 16 Stat. 198, and the history of § 145 proceedings can be traced back to the Act of July 4, 1836 (1836 Act), ch. 357, 5 Stat. 117. Thus, we begin our inquiry with the 1836 Act, which established the Patent Office, the PTO’s predecessor, and first authorized judicial review of its decisions.
1
The 1836 Act provided that a patent applicant could bring a bill in equity in federal district court if his application was *440 denied on the ground that it would interfere with another patent. Id., at 123-124; see also B. Shipman, Handbook of the Law of Equity Pleading §§ 101-103, pp. 168-171 (1897). Three years later, Congress expanded that provision, making judicial review available whenever a patent was refused on any ground. Act of Mar. 3, 1839, 5 Stat. 354. Pursuant to these statutes, any disappointed patent applicant could file a bill in equity to have the district court “adjudge” whether the applicant was “entitled, according to the principles and provisions of [the Patent Act], to have and receive a patent for his invention.” 1836 Act, 5 Stat. 124.
In 1870, Congress amended the Patent Act again, adding intermediate layers of administrative review and introducing language describing the proceeding in the district court. 16 Stat. 198. Under the 1870 Act, an applicant denied a patent by the primary examiner could appeal first to a three-member board of examiners-in-chief, then to the Commissioner for Patents, and finally to an en banc sitting of the Supreme Court of the District of Columbia.[2] Id., at 205. Notably, Congress described that court’s review as an “appeal” based “on the evidence produced before the commissioner.” Ibid. The 1870 Act preserved the prior remedy of a bill in equity in district court for the applicant whose appeal was denied either by the Commissioner or by the Supreme Court of the District of Columbia. Ibid. The district court, in a proceeding that was distinct from the appeal considered on the administrative record by the Supreme Court of the District of Columbia, would “adjudge” whether the applicant was “entitled, according to law, to receive a patent for his invention ... as the facts in the case may appear.” Ibid. In 1878, Congress codified this provision of *441 the 1870 Act as Revised Statute §4915 (R. S. 4915). That statute was the immediate predecessor to § 145, and its core language remains largely unchanged in § 145. Accordingly, both parties agree that R. S. 4915 and the judicial decisions interpreting that statute should inform our understanding of §145.
2
This Court described the nature of R. S. 4915 proceedings in two different cases: Butterworth v. United States ex rel. Hoe, 112 U. S. 50 (1884), and Morgan v. Daniels, 153 U. S. 120 (1894). In Butterworth, the Court held that the Secretary of the Interior, the head of the federal department in which the Patent Office was a bureau, had no authority to review a decision made by the Commissioner of Patents in an interference proceeding. In its discussion, the Court described the remedy provided by R. S. 4915 as
“a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the Patent Office, like that authorized [before the Supreme Court of the District of Columbia], confined to the case as made in the record of that office, but is' prepared and heard upon all competent evidence adduced and upon the whole merits.” 112 U. S., at 61.
The Butterworth Court also cited several lower court cases, which similarly described R. S. 4915 proceedings as “altogether independent” from the hearings before the Patent Office and made clear that the parties were “at liberty to introduce additional evidence” under “the rules and practice of a court of equity.” In re Squire, 22 F. Cas. 1015, 1016 (No. 13,269) (CC ED Mo. 1877); see also Whipple v. Miner, 15 F. 117, 118 (CC Mass. 1883) (describing the federal court’s jurisdiction in an R. S. 4915 proceeding as “an independent, original jurisdiction”); Butler v. Shaw, 21 F. 321, 327 *442 (CC Mass. 1884) (holding that “the court may receive new evidence, and has the same powers as in other cases in equity”).
Ten years later, in Morgan, this Court again confronted a ease involving proceedings under R. S. 4915. 153 U. S. 120. There, a party challenged a factual finding by the Patent Office, but neither side presented additional evidence in the District Court. Id., at 122-123. This Court described the parties’ dispute as one over a question of fact that had already “been settled by a special tribunal [e]ntrusted with full power in the premises” and characterized the resulting District Court proceeding not as an independent civil action, but as “something in the nature of a suit to set aside a judgment.” Id., at 124. Consistent with that view, the Court held that the agency’s findings should not be overturned by “a mere preponderance of evidence.” Ibid.
Viewing Butterworth and Morgan together, one might perceive some tension between the two cases. Butterworth appears to describe an R. S. 4915 proceeding as an original civil action, seeking de novo adjudication of the merits of a patent application. Morgan, on the other hand, appears to describe an R. S. 4915 proceeding as a suit for judicial review of agency action, governed by a deferential standard of review. To resolve that apparent tension, the Director urges us to disregard the language in Butterworth as mere dicta and to follow Morgan. He argues that Butterworth “shed[s] no light on the extent to which new evidence was admissible in R. S. 4915 proceedings or on the standard of review that applied'in such suits.” Brief for Petitioner 33. The Director maintains that Morgan, in contrast, firmly established that a district court in such a proceeding performs a deferential form of review, governed by traditional principles of administrative law. We reject the Director’s position.[3]
*443 We think that the differences between Butterworth and Morgan are best explained by the fact that the two cases addressed different circumstances. Butterworth discussed the character of an R. S. 4915 proceeding in which á disappointed patent applicant challenged the Board’s denial of his application. Although that discussion was not strictly necessary to Butterworth’s holding it was also not the kind of ill-considered dicta that we are inclined to ignore. The But-terworth Court carefully examined the various provisions providing relief from the final denial of a patent application by the Commissioner of Patents to determine that the Secretary of the Interior had no role to play in that process. 112 U. S., at 59-64. The Court further surveyed the decisions of the lower courts with regard to the nature of an R. S. 4915 proceeding and concluded that its view was “the uniform and correct practice in the Circuit Courts.” Id., at 61. We note that this Court reiterated Butterworth⅛ well-reasoned interpretation of R. S. 4915 in three later cases.[4]
Morgan, on the other hand, concerned a different situation from the one presented in this case. First, Morgan addressed an interference proceeding. See 153 U. S., at 125 (emphasizing that “the question decided in the Patent Office is one between contesting parties as to priority of invention”). Although interference proceedings were previously governed by R. S. 4915, they are now governed by a separate section of the Patent Act, 35 U. S. C. § 146, and therefore do not implicate § 145. In addition, Morgan did not involve a *444 proceeding in which new evidence was presented to the District Court. See 153 U. S., at 122 (stating that the ease “was submitted, without any additional testimony, to the Circuit Court”).
3
Because in this case we are concerned only with § 145 proceedings in which new evidence has been presented to the District Court, Butterworth rather than Morgan guides our decision. In Butterworth, this Court observed that an R. S. 4915 proceeding should be conducted “according to the ordinary course of equity practice and procedure” and that it should be “prepared and heard upon all competent evidence adduced and upon the whole merits.” 112 U. S., at 61. Likewise, we conclude that a district court conducting a § 145 proceeding may consider “all competent evidence adduced,” id., at 61, and is not limited to considering only new evidence that could not have been presented to the PTO. Thus, we agree with the Federal Circuit that “Congress intended that applicants would be free to introduce new evidence in § 145 proceedings subject only to the rules applicable to all civil actions, the Federal Rules of Evidence and the Federal Rules of Civil Procedure.” 625 F. 3d, at 1331.
We also agree with the Federal Circuit’s longstanding view that, “where new evidence is presented to the district court on a disputed fact question, a de novo finding will be necessary to take such evidence into account together with the evidence before the board.” Fregeau v. Mossinghoff, 776 F. 2d 1034, 1038 (1985). As we noted in Zurko, the district court acts as a factfinder when new evidence is introduced in a § 145 proceeding. 527 U. S., at 164. The district court must assess the credibility of new witnesses and other evidence, determine how the new evidence comports with the existing administrative record, and decide what weight the new evidence deserves. As a logical matter, the district court can only make these determinations de novo because it is the first tribunal to hear the evidence in question. Furthermore, a de novo standard adheres to this Court’s instruc *445 tion in Butterworth that an R. S. 4915 proceeding be heard "upon the whole merits” and conducted “according to the ordinary course of equity practice and procedure.” 112 U. S., at 61.
D
Although we reject the Director’s proposal for a stricter evidentiary rule and an elevated standard of review in § 145 proceedings, we agree with the Federal Circuit that the district court may, in its discretion, “consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant’s newly-admitted evidence.” 625 F. 3d, at 1335. Though the PTO has special expertise in evaluating patent applications, the district court cannot meaningfully defer to the PTO’s factual findings if the PTO considered a different set of facts. Cf. Microsoft Corp. v. i4i Ltd. Partnership, 564 U. S. 91, 111 (2011) (noting that “if the PTO did not have all material facts before it, its considered judgment may lose significant force”). For this reason, we conclude that the proper means for the district court to accord respect to decisions of the PTO is through the court’s broad discretion over the weight to be given to evidence newly adduced in the § 145' proceedings.
The Director warns that allowing the district court to consider all admissible evidence and to make de novo findings will encourage patent applicants to withhold evidence from the PTO intentionally with the goal of presenting that evidence for the first time to a nonexpert judge. Brief for Petitioner 23. We find that scenario unlikely. An applicant who pursues such a strategy would be intentionally undermining his claims before the PTO on the speculative chance that he will gain some advantage in the § 145 proceeding by presenting new evidence to a district court judge.
HH <1
.For these reasons, we conclude that there are no limitations on a patent applicant’s ability to introduce new evidence in a § 145 proceeding beyond those already present in *446 the Federal Rules of Evidence and the Federal Rules of Civil Procedure. Moreover, if new evidence is presented on a disputed question of fact, the district court must make de novo factual findings that take account of both the new evidence and the administrative record before the PTO. In light of these conclusions, the Federal Circuit was correct to vacate the judgment of the District Court, which excluded newly presented evidence under the view that it “need not consider evidence negligently submitted after the end of administrative proceedings.” Civ. Action No. 03-0901, at 15, App. to Pet. for Cert. 189a.
The judgment is affirmed, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

It is so ordered.

 On September 16,2011, the President signed the Leahy-Smith America Invents Act, 125 Stat. 284, into law. That Act made significant changes to Title 35 of the United States Code, some of which are related to the subject matter of this case. For example, the Act changed the venue for §145 actions from the United States District Court for the District of Columbia to the United States District Court for the Eastern District of Virginia, id., at 316, changed the name of the Board of Patent Appeals and Interferences to the Patent Trial and Appeal Board, id., at 290, and changed the name of interferences to derivation proceedings, ibid. Neither party contends that the Act has any effect on the questions before us, and all references and citations in this opinion are to the law as it existed prior to the Act.

 The Supreme Court of the District of Columbia was a trial court created by Congress in 1863. Act of Mar. 3, 1863, ch. 91, 12 Stat. 762. Although the court was generally one of first instance, it also functioned as an appellate court when it sat en banc. Voorhees, The District of Columbia Courts: A Judicial Anomaly, 29 Cath. U. L. Rev. 917, 923 (1980).

 Both parties cite additional cases from the lower courts that they claim support their view of the statute, but these eases are too diverse to support any firm inferences about Congress’ likely intent in enacting § 145.

 In Gandy v. Marble, 122 U. S. 432 (1887), the Court described an R. S. 4915 proceeding as “a suit according to the ordinary course of equity practice and procedure” rather than a “technical appeal from the Patent Office.” Id., at 439 (citing Butterworth, 112 U. S., at 61). Likewise, in In re Hien, 166 U. S. 432 (1897), the Court distinguished an R. S. 4915 proceeding from the “ ‘technical appeal from the Patent Office’ ” authorized under R. S. 4911, the predecessor to current § 141. Id., at 439 (quoting Butterworth, supra, at 61). And, finally, in Hoover Co. v. Coe, 325 U. S. 79 (1945), the Court cited Butterworth to support its description of an R. S. 4915 proceeding as a “formal trial.” 325 U. S., at 83, and n. 4.