NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MITCHELL R. SWARTZ,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES PATENT AND TRADEMARK OFFICE, ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**

*Defendants-Appellees*

---

2018-1122

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:17-cv-00482-LMB-TCB, Judge Leonie M. Brinkema.

---

Decided: July 17, 2018

---

MITCHELL R. SWARTZ, Weston, MA, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for defendants-appellees. Also represented by MICHAEL S. FORMAN, BENJAMIN T. HICKMAN, THOMAS W. KRAUSE;

TRACY DOHERTY-MCCORMICK, KIMERE JANE KIMBALL, Office of the United States Attorney for the Eastern District of Virginia, Alexandria, VA.

_____

Before PROST, *Chief Judge,* NEWMAN and LINN, *Circuit Judges.*

PER CURIAM.

Mitchell R. Swartz brought a complaint in the Eastern District of Virginia pursuant to 35 U.S.C. § 145, in which he challenged the decision of the U.S. Patent Trademark Office rejecting six of Swartz's patent applications—U.S. Patent Application No. 12/932,058; No. 12/589,258; No. 13/544,381; No. 12/316,643; No. 09/748,691; and No. 09/750,765—as unpatentable under 35 U.S.C. §§ 101 and 112. Swartz also alleged various forms of misconduct by the patent office. The district court dismissed his complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Swartz now appeals. *Swartz v. Matal*, No. 1:17-cv-482 (E.D.Va. Aug. 22, 2017) (Brinkema, J.) ("*District Court Op.*"). Because the District Court did not err, we affirm.

We begin with the '381 application. Section 145 creates a cause of action to challenge a "decision of the Patent Trial and Appeal Board." At the time Swartz filed his complaint in district court, and throughout the pendency of this action before the district court's decision, the Board had not yet issued its decision with respect to the '381 application. Because there was no "decision" of the Board to challenge with respect to that application, the district court properly dismissed that portion of Swartz's claim.

The district court also properly dismissed Swartz's claims with respect to the '058 and '765 applications on the bases of collateral estoppel. In *In re Swartz*, 50 F. App'x 422, 424-25 (Fed. Cir. 2002) ("*Swartz II*") (per

curiam), this court affirmed the rejection of Swartz's U.S. Patent Application No. 08/406,457 for failure of utility and enablement. The at-issue '058 application is a continuation of the '457 application, and the representative claims in the two are "identical," as represented by the Board and uncontested by Swartz.

Similarly, in *In re Swartz*, 232 F.3d 862, 864 (Fed. Cir. 2000) ("*Swartz I*"), this court held that the claims of Swartz's U.S. Patent Application No. 07/760,970 were unpatentable for failure of utility and enablement. The at-issue '765 application is a continuation of the '970 application, and the representative claims in the two are nearly identical.

The core requirements for collateral estoppel are that: the issue in question is identical to an issue previously decided, the issue was actually litigated in the prior proceeding, the resolution of the issue was necessary to the prior judgment, and the party challenging the issue must have been given a full and fair opportunity to litigate the issue in the prior proceeding. *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1366 (Fed. Cir. 2000). Swartz argues that the district court wrongly applied estoppel here because he submitted new references not present in the previous appeals to show utility, and because the applications here no longer include explicit references to cold fusion.

Neither the new references nor the elimination of explicit reference to cold fusion avoids the application of collateral estoppel. Swartz has not shown that these differences "materially alter the question of invalidity." *See Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Substantially identical claims were

previously found to be invalid as lacking utility and not enabled. That holding is binding on Swartz.[1]

We turn next to the '258, '643, and '691 applications. The PTO carries the initial burden of challenging the utility of an invention. *In re Brana*, 51 F.3d 1560, 1566 (Fed. Cir. 1995). However, the PTO carries that burden if the patent "suggest[s] an inherently unbelievable undertaking or involve[s] implausible scientific principles." *Id.* As we have held, cold fusion suggests such an inherently unbelievable undertaking. *Swartz I*, 232 F.3d at 864. The burden therefore shifted to Swartz to show sufficient evidence to convince an ordinarily skilled artisan of the inventions' utility. *Id.* at 864. The evidence and arguments Swartz presents do not satisfy this burden.

Swartz makes two inconsistent arguments: his inventions are not directed to cold fusion or LENR, and he presented new evidence to the district court proving the utility of LENR technology.

First, Swartz's assertion that his inventions are not directed to cold fusion or LENR technology is baseless. The references Swartz relies on here are related to LENR technology. Moreover, the parent applications were expressly directed to cold fusion, as we previously held.

Second, the new evidence submitted by Swartz does not cure the lack of enablement or utility. The new evidence comprised reports by the Defense Intelligence Agency ("DIA"), Defense Threat Reduction Agency ("DTRA"), and other scientific articles.

---

[1]    That this case is proceeding under § 145 in the district court, instead of through a direct appeal from the U.S. Patent and Trademark Office ("PTO") is also inapposite—it is the identity of issues, *inter alia*, not the cause of action, that gives rise to collateral estoppel.

The DIA report cited Swartz's research to support the statement, "In May 2002, researchers at JET Thermal in Massachusetts reported excess heat and optimal operating points for LENR manifolds." That same report indicates fundamental skepticism about the result of the research. It notes that scientists from various nations "are devoting significant resources to this work in the hope of finding a new clean energy source. Scientists worldwide have been reporting anomalous excess heat production, as well as evidence of nuclear particles and transmutation." It also states, "*If* nuclear reactions in LENR experiments are real and controllable, DIA assesses that whoever produces the first commercialized LENR power source could revolutionize energy production and storage for the future." The DIA report also states that "much skepticism remains" about LENR programs. The DTRA reference strikes a similar note. It explains that LENR reactions "are showing some remarkable progress . . . but experiments remain only thinly reproducible," that they "suffer[] from a basic lack of understanding of the governing physics," and that "it seems unlikely that deployable/useable devices could be expected within a five to ten year horizon."

These references do little to overcome the presumption of no utility. At best, they demonstrate some positive experimental results attained by Swartz, tempered by much remaining skepticism and uncertainty about the utility of the discussed technology. With respect to the remaining declarations and articles, the district court correctly concluded, "nowhere, for example, does [Swartz] explain how an invention described in any of the relevant patent applications was used in the course of any of the referenced demonstrations or experiments." *District Court Op.* at 11.

Swartz presents a number of additional arguments, none of which have merit. Swartz cites *In re Oetiker*, 977 F.2d 1443 (Fed. Cir. 1992) for the proposition that the

Board failed to make its prima facie case of invalidity. As discussed above, applications that suggest inherently unbelievable inventions satisfy the Board's initial burden to show lack of utility, and we have previously held that Dr. Swartz's LENR-related inventions here properly fall within that realm.

Swartz argues that the district court failed to apply the *de novo* review required under § 145. *See Kappos v. Hyatt*, 566 U.S. 431, 444 (2012). The district court explicitly applied a de novo standard of review, citing *Hyatt*. *District Court Op.* at 7.

Swartz argues that the PTO failed to "docket[]" and "sequestered" documents. Swartz does not explain what documents were not docketed or were hidden, or by whom, or their potential relevance to the utility and enablement determinations. Swartz also argues that the PTO "misdescribed" several of his patent applications as directed to cold fusion. According to Swartz, the '058 application is properly directed to "a heat measurement system" and the '765 application is properly directed to "a measurement of hydrogen loading into a metal." Regardless of how the applications are described, however, the nearly identical claims presented in the '058 and '765 applications have already been determined in *Swartz I* and *Swartz II* to be within the realm of the inherently unbelievable and, therefore, unpatentable. As discussed above, collateral estoppel properly forecloses revisiting that issue here.

Swartz argues that the PTO has issued patents in the field, citing Dr. Swartz's applications. Each patent is evaluated on its own terms, however, and the citation to Dr. Swartz's applications does not demonstrate their utility.

Swartz next argues that the district court erred in dismissing his various Constitutional claims for discrimination, violation of due process, violation of his right to an impartial tribunal under 28 U.S.C. § 144, and violation of

the patents clause of the Constitution. Swartz specifically relies on 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) to support these violations. Swartz does not explain why the district court erred in its conclusions that 42 U.S.C. § 1983 only applies to actions taken under color of law by "any State or Territory," not the federal government, and that a *Bivens* action cannot be brought against a federal employee in his official capacity. Swartz also has not proffered anything but a bare assertion of prejudice by the district court. Finally, Swartz has not shown error in the district court's dismissal of his challenge under the patent clause of the Constitution. His entitlement to a patent under that provision is framed and defined by Title 35 of the U.S. Code, which includes explicit requirements for utility and enablement. Because the Board and district court adequately showed that Swartz's inventions lack utility and enablement, he is not entitled to patents on those inventions.

We have considered Swartz's other arguments, including his allegations of intentional torts, fraudulent statements, and criminal misconduct, and find them lacking in any merit.

## AFFIRMED

### Costs

No costs.