**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1871**

———————

XACTWARE SOLUTIONS, INC., Plaintiff (Trademark Trial & Appeal Board Opposer),

Respondent – Appellant,

v.

BUILDXACT SOFTWARE LIMITED, Defendant (Applicant in Trademark Trial & Appeal Board opposition),

Movant – Appellee.

------------------------------

UNITED STATES OF AMERICA,

Amicus Supporting Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:22-cv-00596-AJT-WEF)

———————

Argued:  December 6, 2023                          Decided:  March 13, 2024

———————

Before GREGORY and HARRIS, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Judge Harris and Senior Judge Floyd joined.

———————

**ARGUED:**  James Wilson Dabney, HUGHES HUBBARD & REED LLP, New York, New York, for Appellant.  Ashly Iacullo Boesche, PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP, Chicago, Illinois, for Appellee. Daniel Tenny, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.  **ON BRIEF:**  James H. Boykin, III, Washington, D.C., Patrice P. Jean,

Emma L. Baratta, HUGHES HUBBARD & REED LLP, New York, New York, for Appellant. Bradley L. Cohn, PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP, Chicago, Illinois, for Appellee. Brian M. Boynton, Principal Deputy Assistant Attorney General, Cynthia A. Barmore, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas W. Krause, Solicitor, Christina J. Hieber, Senior Counsel for Trademark Policy and Litigation, Thomas L. Casagrande, Associate Solicitor, UNITED STATES PATENT AND TRADEMARK OFFICE, Alexandria, Virginia; Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Amicus Curiae.

———————————

GREGORY, Circuit Judge:

Appellant Xactware is challenging the publication of Appellee Buildxact's mark via opposition proceedings in the U.S. Patent and Trademark Office (PTO). As part of these proceedings, Xactware wants to orally depose a Buildxact employee. All of Buildxact's employees are in Australia. The district court granted Buildxact's motion to quash Xactware's subpoena. It found that Buildxact fell outside the jurisdiction of the relevant statute because it was not "residing within or being within" the district. 35 U.S.C. § 24. Xactware appeals. We hold that a district court lacks authority to subpoena evidence that, under PTO rules, is inadmissible in internal PTO proceedings. We therefore affirm the district court's judgment on different grounds.

I.

Appellee Buildxact is an Australian company with its principal place of business in Melbourne, Australia. J.A. 21. In October 2019, it filed an application with the U.S. Patent and Trademark Office (PTO) for use of BUILDXACT as a trademark and service mark in connection with its construction management software. J.A. 66. When Buildxact filed its application, it did not designate an agent in the United States for service of process. The PTO director is thus its statutory default agent for service of process. *See* 15 U.S.C. § 1051(e). The PTO is located in the Eastern District of Virginia (Alexandria). Besides the PTO director, Buildxact has no officers, agents, or employees that reside or regularly transact business in Virginia or within 100 miles of the Eastern District of Virginia. J.A. 21. Buildxact also has no facilities, offices, or operations in that area. J.A. 21.

3

The PTO published Buildxact's mark, and Appellant Xactware initiated an opposition proceeding before the Trademark Trial and Appeal Board (the Appeal Board). J.A. 374.  Xactware contacted Buildxact's counsel and said it wanted to depose three Buildxact officers by video deposition.  J.A. 9.  Under 37 C.F.R. §§ 2.120(c) and 2.124, depositions in foreign countries must be taken in written form, unless the parties consent to an oral deposition or the party trying to take the oral deposition shows good cause.  *See also* T.B.M.P. § 404.03(b).  Xactware did not move for good cause.  When Buildxact said it would only allow written depositions, Xactware subpoenaed Buildxact by serving its statutory default agent, the PTO director.  J.A. 9.  The subpoena commanded the in-person deposition of a Buildxact corporate representative.  J.A. 9.

Buildxact asked Xactware's counsel to withdraw the subpoena, arguing that the subpoena was improper.  J.A. 9.  When Xactware didn't withdraw the subpoena, Buildxact moved in the district court to quash the subpoena.  J.A. 7.

After briefing and a motion hearing, the magistrate judge granted Buildxact's motion to quash via oral ruling.  J.A. 236.  It held that, under 35 U.S.C. § 24, a foreign corporation "with no corporate presence in the Eastern District of Virginia other than doing the bare minimum of what was necessary to apply for a trademark," has insufficient contacts to qualify as "being within" the district.  J.A. 235.  Buildxact therefore could not be subpoenaed to "appear and testify" under § 24 and instead could only be compelled to provide written testimony.

Xactware moved for a review of the magistrate judge's order.  J.A. 241.  The district court, on *de novo* review, reached the same conclusion, holding that the presence of the

4

PTO director within the Eastern District of Virginia was not enough to find Buildxact as "being within" the district. J.A. 375.

## II.

We have appellate jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1291. We review a district court's order on a motion to quash a subpoena for abuse of discretion. *United States v. Under Seal*, 737 F.3d 330, 332 (4th Cir. 2013). But when the district court's determination is based on an interpretation of law, as it is here, we review those conclusions *de novo*. *Id.* at 332–33.

## III.

We start with some background. To register a trademark, the applicant files an application with the PTO. 15 U.S.C. § 1051(a). An applicant not domiciled in the United States "may" designate a U.S. resident to "be served notices or process in proceedings affecting the mark." 15 U.S.C. § 1051(e). If they don't designate someone, notices or process "may be served on the Director" of the PTO. *Id.*

When the PTO believes that an applicant's mark is entitled to registration, it publishes the mark. This gives other interested parties the opportunity to oppose registration. Opposition is referred to the Trademark Trial and Appeal Board (the Appeal Board) "to determine and decide the respective rights of registration." 15 U.S.C. § 1067(a).

Proceedings in the PTO are governed by 35 U.S.C. §§ 21–28. Relevant here are Sections 23 and 24. The first provides:

5

> The Director may establish rules for taking affidavits and depositions required in cases in the Patent and Trademark Office.

35 U.S.C. § 23.

The PTO has promulgated rules about securing deposition testimony in opposition proceedings. Its rules for depositions of domestic parties in the U.S. are different from its rules for depositions in foreign countries and depositions of foreign parties in the U.S. *Compare* 37 C.F.R. § 2.120(b), *with* 37 C.F.R. § 2.120(c). The party taking discovery is entitled to orally depose a domestic party in person. 37 C.F.R. § 2.120(b). In contrast, depositions in foreign countries must be taken as written depositions, unless the parties stipulate to an oral deposition or the Appeal Board orders an oral deposition upon motion for good cause. 37 C.F.R. § 2.120(c)(1). The exception to that is if the foreign party "is or will be, during a time set for discovery, present within the United States." 37 C.F.R. § 2.120(c)(2). In that case, the party seeking discovery can orally depose the foreign party, with notice. *Id.*

> The next section of the statute, 35 U.S.C. § 24, provides, in relevant part:

> The clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena for any witness residing or being within such district, commanding him to appear and testify before an officer in such district authorized to take depositions and affidavits, at the time and place stated in the subpoena. The provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent and Trademark Office.

35 U.S.C. § 24.

> In turn, Federal Rule of Civil Procedure 45(c) provides:

> (1) A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

6

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

  (i) is a party or a party's officer; or

  (ii) is commanded to attend a trial and would not incur substantial expense.

A.

As a preliminary matter, we explain why a previous Fourth Circuit case, *Rosenruist-Gestao E Servicos LDA v. Virgin Enterprises Ltd.*, 511 F.3d 437 (4th Cir. 2007), does not dictate the outcome here, contrary to Xactware's view. In Xactware's reading, *Rosenruist* held that a company that sold no products in the United States and had no business presence there was still "being within" the district where Appellee Virgin Enterprises sued. Virgin Enterprises was therefore entitled to subpoena testimony from Rosenruist, Xactware says. Even if we agreed with Xactware's interpretation of *Rosenruist*, we would come to the same outcome here. But because we disagree with it, we take this opportunity to clarify what *Rosenruist* did and did not hold.

In *Rosenruist*, Portuguese company Rosenruist-Gestao E Servicos LDA, applied for a U.S. trademark. *Id.* at 439. Rosenruist had not sold any products in the U.S. or established a business presence there. *Id.* Virgin Enterprises opposed the registration of the mark and sought a testimonial deposition of Rosenruist. Virgin served a Rule 30(b)(6) deposition subpoena, directing Rosenruist to produce a company representative to orally testify in McLean, Virginia. *Id.* at 441. After initially agreeing with Virgin that Rosenruist could be subpoenaed, the magistrate judge changed its mind and declined to compel

7

Rosenruist to obey the subpoena. *Id.* at 442. The judge said that the term "witness" in 35 U.S.C. § 24 applied only to natural persons, not to corporations. *Id.* With no Rosenruist officers in the district who could address the subpoena topics, no one from Rosenruist could be compelled to testify. The district court agreed, and Virgin appealed.

This Court said that "witness" includes corporations. *Id.* at 444. It declined to weigh in on Rosenruist's other argument: that the district court lacked subpoena power over Rosenruist because Rosenruist had no business activities, managing agents, or agents consenting to testify within the district, and therefore was not "residing or being within" the district. *Id.* at 446. The Court noted that Rosenruist had not appealed the district court's order on that issue and had not developed the argument in briefing before the court. *Id.* The issue was therefore "not properly before the panel." *Id.* "[W]e need not determine precisely what is required for a witness to satisfy the statute's 'residing or being' component," the majority wrote. *Id.* But in a one-sentence footnote, it said simply, "Were the issue before us, however, we would conclude that Rosenruist's activities in this case were sufficient to qualify it as 'being within [the] district.'" *Id.* at n.5.

*Rosenruist*'s holding was simply that "witness" in 35 U.S.C. § 24 is not limited to natural persons. Although the Court said it would hold that Rosenruist was "residing or being within" the district were the issue before it, the Court provided no explanation of how it reached that conclusion. *Rosenruist* therefore does not require us to find that Buildxact is "within" the district. In fact, we need not answer the question of whether Buildxact is "within" the district at all. Whether an entity can "be[] within" a district merely by having an agent designated to receive service of process there—and any

8

potential interactions with Rule 45(c)'s geographic limits—is a question for another day. We resolve this case on alternative grounds.

B.

The PTO argues that, even assuming Buildxact is "within" the district, the subpoena was properly quashed because it is still barred by the PTO's rules. We agree. In order to explain our rationale, we first recount the relevant legislative history.

The original Patent Act was passed in 1790. Patent Act of 1790, 1 Cong. Ch. 7, 1 Stat. 109. It said nothing about the Patent Board's authority to create rules for taking affidavits and depositions, nor did it mention courts' power to issue subpoenas. As the Federal Circuit has recounted, this inability to compel testimony created significant problems. *See Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1322–26 (Fed. Cir. 2013) (explaining history of the Patent Act and why Congress amended certain sections). An 1857 report by the Commissioner of Patents explained:

> The existing laws furnish no means for compelling the attendance of witnesses, nor for obliging them to testify upon such issues. The interests bound up with these investigations are frequently of the greatest magnitude; and, as a consequence, refractory or mercenary men, availing themselves of this omission in the law, have refused to appear or give their depositions, except upon the payment of the most exorbitant sums by parties claiming the testimony. Cases of this character, while working the most cruel hardship to individuals, have tended to bring the administration of the government into discredit, if not into contempt. No reason is perceived why the process of subpoena, freely allowed to all litigating their interests in the courts of the country, shall be withheld from the parties to these important and complicated controversies.

1 United States Patent Office, *Report of the Commissioner of Patents for the Year 1857: Arts and Manufactures*, S. Exec. Doc. No. 35–30, at 7 (1858). The House Committee on

9

Patents acted on that information, introducing bills in 1857 and 1858 to create a mechanism for compelling testimony. *Abbott Labs.*, 710 F.3d at 1325 (citing H.R. Rep. No. 34–98, at 1 (1857) and H.R. Rep. No. 35–178, at 2 (1858)). In a report that accompanied the 1858 bill, the Committee on Patents noted the "[s]erious difficulties" that had arisen in "pursuing the regular and necessary investigations in the office" because there was no way to compel testimony. H.R. Rep. No. 35–178, at 2 (1858). Congress revamped the Act in 1861. In that version, what is currently Sections 23 and 24 appeared in one section and read:

> [T]he Commissioner of Patents may establish rules for taking affidavits and depositions required in cases pending in the Patent Office, and such affidavits and depositions may be taken before any justice of the peace, or other officer authorized by law to take depositions to be used in the courts of the United States, or in the State courts of any State where such officer shall reside; and in any contested case pending in the Patent Office it shall be lawful for the clerk of any court of the United States for any district or Territory, and he is hereby required, upon the application of any party to such contested case . . . to issue subpoenas for any witnesses residing or being within the said district or Territory, commanding such witnesses to appear and testify before any justice of the peace . . . ."

Patent Act of 1861, 36 Cong. Ch. 88, 12 Stat. 246.

In 1870, this section was divided into three back-to-back sections, with tweaks to the language. *See* Patent Act of 1870, 41 Cong. Ch. 230, §§ 43–45, 16 Stat. 198, 204. In 1873, the sections were again reorganized. *See* Act of Dec. 1, 1873, 18 Stat. 1, 957–58.

In 1922, the subpoena section of the Act was amended again, this time to read:

> The clerk of any court of the United States, for any District or Territory wherein testimony is to be taken for use in any contested case pending in the Patent Office, shall, upon the application of any party thereto, or of his agent or attorney, issue a subpoena for any witness residing or being within such District or Territory, commanding him to appear and testify before any officer in such District or Territory authorized to take depositions and affidavits at any time and place in the subpoena stated. But no witness shall

10

be required to attend at any place more than forty miles from the place where the subpoena is served upon him; and the *provisions of section 869 of the Revised Statutes relating to the issuance of subpoenas duces tecum shall apply to contested cases in the Patent Office.*

Act of Feb. 18, 1922, 67 Cong. Ch. 58, § 7, 42 Stat. 389, 391–92 (emphasis added).

In turn, the subpoenas duces tecum section of the Revised Statutes allowed a district court to subpoena documents that, "if produced, would be competent and material evidence"—in other words, evidence that would be admissible. *See* Rev. Stat. § 869 (1st ed. 1875), *enacted by* Act of Jan. 24, 1827, 19 Cong. Ch. 4, § 2, 4 Stat. 197, 199–200.

The Patent Act of 1952 reorganized the sections yet again, this time into the two sections at issue here. Instead of referencing the subpoena section of the Revised Statutes (which had now been replaced by the U.S. Code)[1], the 1952 version (and today's) provides that "[t]he provisions of the Federal Rules of Civil Procedure relating to the attendance of witnesses and to the production of documents and things shall apply to contested cases in the Patent Office." Patent Act of 1952, 82 Cong. Ch. 950, §§ 23–24, 66 Stat. 792, 795, *codified at* 35 U.S.C. §§ 23–24.

That brings us to this case. The PTO says that because its rules explicitly prohibit this type of discovery deposition, a district court lacks the authority under the statute to issue a subpoena compelling the deposition. For two reasons, we agree. First, 35 U.S.C. § 24 must be read in conjunction with Section 23's provision that "[t]he Director may establish rules for taking affidavits and depositions required in cases in the Patent and

---

[1] Congress enacted the Revised Statutes in 1874. They were replaced by the United States Code in 1926.

11

Trademark Office." Second, even reading Section 24 in isolation, the phrase "testimony . . . to be taken *for use in* any contested case" shows that a court can subpoena only testimony that would be approved by the PTO in the first place (emphasis added). We address each of these points in turn.

### i. Interplay of Sections 23 and 24

We begin with the structural rationale. As explained above, the language in Sections 23 and 24 was enacted as a single sentence in the Patent Act of 1861. While the provisions have been reorganized since, "[n]othing in this subsequent history reveals an intent on the part of Congress to sever the relationship between the two provisions." *Abbott Labs.*, 710 F.3d at 1323. Congress therefore clearly contemplated that the PTO director would have significant power over depositions in opposition proceedings.

Legislative history also shows that Section 24 was not intended to constrain the PTO's powers under Section 23, but instead was added to "authorize[] district courts to lend their coercive powers to the [PTO]." *Id.* (citation and quotations omitted). As explained above, before Sections 23 and 24 were enacted, parties struggled to "secure needed testimony from recalcitrant fact witnesses." *Id.* at 1324. Although the PTO's rules allowed depositions in opposition proceedings, the rules "offered no means for compelling the attendance of deponents." *Id.* Congress remedied that defect by giving district courts the power to enforce the PTO's rules—to act in service of the Office. As we have previously explained, Section 24 "assigns a supportive role to the district courts to ensure the smooth functioning of the procedures adopted by the PTO." *Rosenruist*, 511 F.3d at 444 (citing *Frilette v. Kimberlin*, 508 F.2d 205, 210 (3d Cir. 1974) (en banc)). If Congress

12

had incorporated the Federal Rules into Section 24 in an attempt to undermine the PTO's previously broad rulemaking authority under Section 23, it presumably would have said so. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions."). The last sentence of Section 24 is therefore better read as filling in any gaps in the PTO's own rules.[2]

Xactware responds that the PTO regulations at issue, 37 C.F.R. §§ 2.120 and 2.123 were promulgated based on authority granted by other parts of the statute, not on the authority granted by Section 23. Those parts of the statute provide that "[t]he Director shall make rules and regulations, *not inconsistent with law*" which govern proceedings in the Patent and Trademark Office. 15 U.S.C. §§ 1123, 35 U.S.C. § 2 (emphasis added). Because regulations that are inconsistent with the Federal Rules of Civil Procedure are necessarily inconsistent with Section 24's provision about the Federal Rules of Civil Procedure, the PTO Director lacks the authority to promulgate those regulations, Xactware says. We disagree. This argument assumes that Sections 23 and 24 do not allow for rules and regulations that differ from the Federal Rules. But for the reasons explained above and below, we believe that they do.

---

[2] Indeed, PTO regulations explicitly contemplate that they may contradict the Federal Rules. *See* 37 C.F.R. § 2.120(a)(1) ("*Except as otherwise provided* in this section, and wherever appropriate, the provisions of the Federal Rules of Civil Procedure relating to disclosure and discovery shall apply.").

13

ii. "For Use In"

In addition to Section 23, Section 24 by itself limits depositions to those authorized by the PTO.  As a reminder, the PTO rules say that depositions taken in foreign countries must be taken as written depositions, with exceptions not relevant here.  37 C.F.R. §§ 2.120(c)(1), 2.123(a)(2), 2.124.

Section 24 says that a district court can subpoena testimony "to be taken for use in" any contested case.  35 U.S.C. § 24.  Under PTO rules, testimony cannot be used in Appeal Board proceedings unless it has been taken in compliance with PTO rules.  37 C.F.R. 2.123(k).  This means that any oral testimony taken in a foreign country that does not comply with 37 C.F.R. § 2.124 is not "taken for use in" a contested case; under the PTO rules, it cannot be used in the case.

This interpretation comports with the way this Circuit has read a similar "for use" requirement in another part of the U.S. Code.  Under 28 U.S.C. § 1782, district courts can order discovery "for use in a proceeding in a foreign or international tribunal."  We recently held that the "for use" requirement in § 1782 requires a "reasonable possibility that the evidence sought 'will be employed with some advantage or serve some use in the proceeding.'"  *In re Newbrook Shipping Corp.*, 31 F.4th 889, 895 (4th Cir. 2022) (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  Here, there is no "reasonable possibility" that any evidence obtained via an involuntary oral deposition abroad could be used in the opposition proceedings.  The Appeal Board would bar the use of such evidence for being obtained in violation of PTO rules.  Without that "reasonable possibility," the

14

testimony will not be taken "for use in" proceedings and a district court lacks the authority to subpoena the testimony.

Xactware takes issue with that argument for a number of reasons. First, it says that the PTO's argument "would require this Court to re-write the statutory text, 'wherein testimony is to be taken for use in,' so that it reads instead: 'wherein testimony *that the USPTO allows* is to be taken for use in.'" Reply Br. at 15. Because "we may not engraft our own exceptions onto the statutory text," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. ----, ----, 139 S. Ct. 524, 530 (2019) (quotation and citations omitted), it would be improper for us to adopt that interpretation, Xactware says. Reply Br. at 15.

But we need not engraft an exception to reach our conclusion. "[T]estimony . . . to be taken for use in any contested case in the Patent and Trademark Office" is necessarily testimony that the USPTO allows—the PTO, and only the PTO, sets its own rules about what evidence is admissible in contested cases (*i.e.*, cases adjudicated within the PTO). What's more, as a matter of structural interpretation, it makes sense that "taken for use in" would be defined in reference to what the PTO allows. As explained above, the immediately preceding section, 35 U.S.C. § 23, deals with the director's authority to establish rules for taking affidavits and depositions in PTO cases.

Xactware's next argument focuses on the interplay between internal PTO proceedings and district-court civil actions that relate to those proceedings. A party who is dissatisfied with an Appeal Board decision may "have remedy by a civil action" by filing a suit in district court. 15 U.S.C. § 1071(b)(1). That suit is not an appeal. *Compare id.*, *with* 15 U.S.C. § 1071(a)(1) (party to opposition proceeding dissatisfied with Appeal Board

15

decision can alternatively "appeal to the United States Courts of Appeals for the Federal Circuit"). It is a wholly separate suit, where new evidence is allowed and (in cases where new evidence is introduced) a *de novo* standard governs. *See Kappos v. Hyatt*, 566 U.S. 431, 433–34 (2012). The Federal Rules of Civil Procedure and Evidence—not Appeal Board internal rules—govern the proceedings. *Id.* at 433.[3]

Xactware implies that it wouldn't make sense to interpret "for use in" in a way that bars admitting certain evidence in opposition proceedings that would then be admissible in a civil action in district court. But the Supreme Court noted this very possibility in *Kappos* when it said that the "opportunity to present new evidence is significant, not the least because the PTO generally does not accept oral testimony." *Id.* at 435. If we applied Xactware's logic, then Appeal Board opposition proceedings would have to be governed by the same evidentiary rules as district court civil actions—a notion foreclosed by Section 23 and by *Kappos*.

Finally, legislative history itself cuts against Xactware's argument. The Federal Rules of Civil Procedure were not enacted until 1938, long after the subpoena provision was first added to the Patent Act. *Compare* Patent Act of 1861, 36 Cong. Ch. 88, 12 Stat. 246, *with* Fed. R. Civ. P. (eff. Sep. 16, 1938). By 1922, the statute was nearly identical to

---

[3] To be clear, this case is not one of those suits because Xactware is not opposing registration of the mark in the district court. Instead, Buildxact went to the district court with a motion to quash the subpoena—a subpoena that Xactware had issued for purposes of the internal PTO proceedings. J.A. 7–10. Were this case brought in district court under 15 U.S.C. § 1071(b) after the Appeal Board ruled on registration, PTO rules would not govern. The district court's authority to issue or quash a subpoena would be governed by the Federal Rules of Civil Procedure and Evidence.

the current version, with one relevant exception.  In place of today's provision about the

Federal Rules, the statute provided that "[t]he provisions of Section 869 of the Revised

Statutes relating to the issuance of subpoenas duces tecum shall apply to contested cases

in the Patent Office."  Patent Act of 1922, 67 Cong. Ch. 58, § 7, 42 Stat. 389, 391–92.

Between enactment of the previous version and Congress's amendments in 1952,

the Revised Statutes were replaced with the United States Code.  By 1952, then, the

subpoena duces tecum provision was outdated; it referred to the since-abandoned Revised

Statutes and failed to mention the rules that controlled discovery in civil cases.  In fact, the

Senate and House Committee reports state, "Reference to a repealed statute in the first

paragraph is replaced by reference to the Federal Rules of Civil Procedure."  S. Rep. No.

1979, 82d Cong. 2d Sess., P. 4 (1952).  H. Rep. No. 1923, 82d Cong. 2d Sess., P. 5, U.S.

Code Congressional and Administrative News p. 2394 (1952).  Whereas the subpoena

statute allowed a court to issue a subpoena only for *admissible* evidence, *see supra*, Federal

Rule of Civil Procedure 26(b) "requires production of material which, though not itself

admissible, may lead to the discovery of admissible evidence."[4]  *In re Natta*, 388 F.2d 215,

221 (3d Cir. 1968) (Seitz, J., dissenting), dissent adopted as majority in *Frilette v.*

---

[4] Federal Rule of Civil Procedure 26(b) has since been amended to allow parties to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  The point remains, however, that in order to ascertain Congress's intent in 1952, when it replaced the Patent Act's subpoena provision with the Act's FRCP provision, we must look at the version of the Federal Rules that were in place then (in this case, the 1946 amendments to Rule 26).  This is the version Congress had in mind at the time.  And because this version allowed for discovery of much more than just admissible evidence, it significantly departed from the subpoena statute that governed before.

17

*Kimberlin*, 508 F.2d 205 (3d Cir. 1974) (en banc)).  Had Congress intended to significantly expand the district court's subpoena power, it presumably would have said so in more than a one-line sentence that reads as if the change is merely technical.

## IV.

We hold that Section 24 is a limited grant of authority that only empowers district courts to issue subpoenas for depositions that comply with PTO rules.  A contrary ruling would significantly displace the PTO's authority to police its internal proceedings.  It would do so despite statutory context and legislative history showing that district courts have been asked to play a supportive role in the discovery process of PTO proceedings. For the above reasons, the judgment of the district court is

*AFFIRMED.*

18